# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) Plaintiff, ) | Case No.: 2:15-cr-0198-GMN-NJK |
| vs. ) ) | **Order on Restitution and Final Order of Forfeiture** |
| EDWIN FUJINAGA, ) ) | |
| Defendant. ) ) | |

Before the Court is the Government's Proposed Final Order on Forfeiture, (ECF No. 332), to which Defendant Edwin Fujinaga ("Defendant") filed a Response, (ECF No. 324). The Court orders forfeiture against Defendant as explained below.

## I. PROCEDURAL HISTORY AND FACTUAL FINDINGS

The Grand Jury returned a Criminal Indictment against Defendant on July 8, 2015, charging him with Counts 1 through 8 of mail fraud in violation of 18 U.S.C. §§ 1341 and 2; Counts 9 through 17 of wire fraud in violation of 18 U.S.C. §§ 1343 and 2; and Counts 18 through 20 of monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. §§ 1957 and 2. (Indictment, ECF No. 1).

The Criminal Indictment includes several forfeiture allegations. The First Forfeiture Allegation included Counts 1 through 8 for a criminal forfeiture money judgment of $1,559,335,710.94 under 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c). (*Id.* 8:5–9:12). The Second Forfeiture Allegation included Counts 9 through 17 for a criminal forfeiture money judgment of $1,559,335,710.94 under 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c). (*Id.* 9:13–10:20). The Third Forfeiture Allegation included Counts 18 through 20 for a criminal forfeiture money judgment of $116,346.65 under 18 U.S.C. § 981(a)(1)(A) with 28 U.S.C.

§ 2461(c), 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(1). (*Id.* 10:21–12:4).

On November 27, 2018, a jury found Defendant guilty on Counts 1 through 20 of the Indictment. (Indictment, ECF No. 1); (Trial Minutes, ECF No. 262); (Jury Verdict, ECF No. 267). In the case of United States v. Edwin Fujinaga, et al, 2:15-CR-198-GMN-NJK, the Court finds that the Government has proven by preponderance of the evidence the following:

MRI International Inc. (MRI) is a Nevada Limited Liability Corporation, operated in Las Vegas, Nevada. (Indictment, ECF No. 1); (Presentence Investigation Report (PSR), p. 4-5). Defendant owned and controlled MRI as its President and Chief Executive Officer. MRI operated a Service Center located in Tokyo, Japan. Defendant operated a scheme and artifice to defraud as set forth in the PSR, p. 4-5, ¶ 7-16.

Although MRI began business operations in 1998, beginning as early as 2009 and continuing through April 2013, Defendant made, and caused to be made, numerous material misrepresentations and omissions in an effort to fraudulently obtain money from investors investing in MRI. To develop the fraudulent scheme, Defendant represented that MRI engaged in the business of purchasing medical accounts receivable (MARS), which are debts owed by recipients of medical services or products to the individuals or entities that provided those services. Defendant represented that MRI purported to purchase the accounts from providers at a discounted rate and then collect on the accounts from the patients owing money. Furthermore, it was represented that MRI's profit from this activity was generated from the difference between the price at which MRI purchased the MARS and the amount MRI collected on them due to MRI's purportedly superior collections capability.

In furtherance of the scheme and artifice, Defendant solicited investments in MRI by offering Certificates of Investment, claiming to provide investors with consistent, predictable returns resulting from their superior collections ability. Bearing a face value equal to the

amount of the initial investment, the Certificates of Investment promised a series of interest payments which would accrue and be paid, along with the principal, when the Certificates of Investment reached a specified maturity date. When the Certificates of Investment reached maturity, investors were given the option to reinvest the total amount due and owing into a new Certificate instead of receiving a cash payment of the amount they were due.

In efforts to continue the fraudulent scheme, Defendant fraudulently induced investments by knowingly publishing, mailing, distributing, and transmitting promotional materials which falsely represented that MRI would use any money invested in the Certificates of Investment exclusively to purchase MARS, the purported profitable business of MRI. Defendant also falsely represented to investors that investment money would be held and managed by an independent, third-party escrow agent in Nevada using a "lock box" method that prevented MRI, or anyone else, from expending investment money for any purpose other than the purchase of MARS.

Investigating agents determined that, despite representations made by Defendant, Defendant routinely used investors funds for personal enrichment and operating expenses rather than the intended purchase of MARS. Defendant employed numerous false, fraudulent, deceptive, and deceitful representations as necessary to advance the fraudulent scheme, conceal fraudulent activities from others, avoid detection, and enrich himself. The fraudulent scheme caused many investors irreparable financial harm.

Throughout the charged time frame of the fraudulent scheme and artifice, Defendant used the United States Postal Service and other private and commercial interstate carriers to send and receive documents in furtherance of the fraudulent scheme. In addition, electronic wire transfers were used to send funds between bank accounts used by Defendant. During the course of the fraudulent scheme, Defendant laundered fraudulent funds through various financial institutions.

A substantial number of the victim investors were elderly individuals that invested in the fraudulent scheme. Many of those victims were significantly impacted, causing them to reenter the work force to sustain a living. (PSR, p. 5-8); (Indictment, ECF No. 1); (Trial Minutes, ECF No. 262); (Jury Verdict, ECF No. 267).

From 2000 to 2013, Sterling Escrow was MRI's depository of funds disbursement agent that managed two of MRI's bank accounts Sterling Escrow designated as Class A and Select A. These accounts were not like regular escrow accounts or regular trusts. Sterling Escrow only had a contract with MRI and did not have a contract with the victims, unlike a regular escrow or trust. The individual Japanese victims transferred money to Sterling Escrow Class A and Select A. Defendant transferred the victims' money from Class A and Select A into the MRI holding accounts so MRI could buy medical receivables. When Defendant instructed Sterling Escrow to disburse the money from MRI bank accounts of designated Class A, Select A, and the MRI holding accounts, Sterling Escrow transferred the funds to where Defendant directed. Defendant did not have to prove anything nor show the money would purchase MARS. (*See* November 7, 2018, morning session, Trial Transcript (11/7 MSTT), p. 74-106, 125-126, 130); (November 7, 2018, afternoon session, Trial Transcript (11/7 ASTT), p. 139-93); (November 19, 2018, Trial Transcript (11/19 TT), p. 34-35); (Exhibits (Ex.) 38, 80, 111A, 111B, 185, 241, 242, 243, 265, 266, 267, 450 476).

The MRI bank accounts Sterling Escrow designated as Class A or Select A were not lockboxes. The money could be moved out of Sterling Escrow designated Class A, Select A, and the MRI holding accounts without MARS of equivalent value being purchased. Contrary to what Defendant told victims, MRI's expenses were not paid out of net revenue (i.e., the money left over after MRI's victims were paid their interest). Instead, from 2000 to 2013, Defendant used victims' money managed by Sterling Escrow in the Class A, Select A, and the MRI holding accounts to pay interest to previous victims, to pay Defendant's personal

expenses, to pay for Defendant to set up companies and to buy companies, and to pay operating expenses for Defendant's companies. Defendant caused all the money in Select A to be transferred to Class A. Defendant instructed Sterling Escrow to transfer Class A money to MRI general account that is not a lock box. (11/7 MSTT, p. 84-90, 130-31); (11/7 ASTT, p. 139-93); (11/19 TT, p. 34-35); (Ex. 38, 80, 111A, 111B, 185, 241, 242, 243, 265, 266, 267, 450, 476).

All money paid from CSA Service Center account came from MRI General account that came from Class A, Select A, and the MRI holding accounts that came from the Japanese victims. (11/8 TT, p. 25-27); (Ex. 227). For example, Defendant used the victims' funds to pay the bills of Hoy's, The Factoring Company, and Harmon Primary Care, and used the funds to pay for the use of a private jet with Bombardier. Personal expenses included a BMW car lease, American Express balances, alimony payments to Defendant's ex-wife, a Bugatti, a McLaren, a Ford GT, a Shelby, a Bentley, a boat, a horse trailer, payments to Red Rock Country Club, payments to Isabelle Castillo Gardening Services. (*Id.*); (11/7 ASTT, p. 196-207); (11/8 TT, p. 21-25, 27-28); (11/19 TT, p. 34-35, 54-58); (Ex. 47, 219, 220, 227, 228, 230, 248, 263, 402, 403, 450, 455, 463, 464, 465, 466, 470, 471, 476).

Defendant used the victim's funds to purchase medical businesses among others: Anaheim; Huntington Beach, Ontario; Four Seasons Surgery Center, Encino; Harmon Medical Center; Med-Health Pharmaceutical: Hoy's pharmaceutical; One Stop Pharmacy Corporation, Med-Health Medical Supplies. (11/8 TT, p. 30-39, 46-57); (Ex. 217, 223, 237, 239, 476, 477). Defendant caused "buys and sweeps" of his company account receivables with MRI. No profits were made because the "buy and sweeps" were similar amounts. (11/8 TT, p. 43-84); (Ex. 73, 75, 106 A, 106B, 109, 188, 207, 217, 223, 235, 237, 253, 265, 477).

The last time Defendant purchased medical receivables from an outside company not connected to Defendant was 1999 or 2000, where he purchased three of them. (11/8 TT, p. 38-39). Defendant wanted to raise $100,000,000 from October to December 2009 to fund a

pharmaceutical company and to establish a volume purchasing program with Defendant's factories so Defendant could buy his own receivables. (11/8 TT, p. 39-45); (Ex. 75).

From January 2009 to May 2013, the collection on MARS was $476,000. (11/19 TT, p. 49-54); (Ex. 247, 249, 450, 462). Defendant returned $476,000 to MRI general account from the collection on MARS. At the same time Defendant paid interest back to the victims in the amount of $66,900,000 for 2010 and $72,800,000 for 2011. (11/19 TT, p. 52-54); (Ex. 247, 249, 462). For 2010, Defendant would have had to collect approximately $743,000,000 to pay that amount of interest to the victims. For 2011, Defendant would have had to collect approximately $800,000,000 to pay that amount of interest to the victims. (11/19 TT, p. 52-54); (Ex. 247, 249, 462).

Michael Petron is a forensic accountant, a certified public accountant, and a certified fraud examiner, and he examined the Class A, Select A, and the MRI holding accounts which held the victims' money that Defendant fraudulently obtained. (11/19 TT, p. 18-21, 34-35); (Ex. 364, 450). Petron examined numerous bank records and the MAS 90 database. (11/19 TT, p. 21-22, 33); (Ex. 267, 300-309, 310A, 310B, 311-363, 366A, 366B, 366C, 366D, 366E, 367-390). The MAS 90 database was accurate with only $225,000 of $400,000,000 in the database that was not supported by the bank records. (11/19 TT, p. 23-29, 32); (Ex. 267, 400). Petron examined a detailed table from MRI that tracked the victims' deposits and rollovers, detailing everything about the victims starting in January 1, 2008. (11/19 TT, p. 32-33); (Ex. 364). The outstanding balance of money owed to victims based on the outstanding certificates was approximately $1,600,000,000. This amount represents both actual principal invested and accrued interest that was rolled over into new investment certificates. (11/19 TT, p. 60-68); (Ex. 249, 450, 472, 473, 474, 475, 505, 506).

Defendant fraudulently obtained, acquired, or possessed $813,181,566 from the Japanese victims' payments into Class A, Select A, and the MRI holding accounts. Defendant

used the $813,181,566 to pay interest back to the earlier victims, to pay MRI payroll, and for personal use: to pay alimony to his ex-wife and others; to buy companies; to pay his other companies' bills, including, but not limited to, The Factoring Company; Hoy's Pharmaceutical; Harmon Primary Care; Harmon Medical Center; Bombardier Flexjet; Wildfire Detailing; Anaheim; Huntington Beach, Ontario; Four Seasons Surgery Center, Encino; Med-Health Pharmaceutical; One Stop Pharmacy Corporation; and Med-Health Medical Supplies; to pay for construction other than for MRI; to pay BMW; to pay American Express; to buy a Bugatti, a McLaren, a Ford GT, a Shelby, a Bentley, a boat, a horse trailer; to pay for Red Rock Country Club; and to pay for Isabelle Castillo Gardening Services; etc. (11/7 MSTT, p. 74-106, 125-126, 130-131); (11/7 ASTT, p. 139-207); (11/8 TT, p. 21-28; 30-39, 43-84, 94-95, 99-100, 145-150); (11/19 TT, p. 18-29, 32-83); (Ex. 38, 47, 73, 75, 80, 106 A-106B, 109, 111A-111B, 124, 154, 157, 179, 185, 188, 203, 207, 217, 219-220, 223, 227-228, 230, 235, 237, 239, 241-243, 247-249, 253-254, 263, 265-267, 300-309, 310A-310B, 311-364; 366A-366E, 367-390, 400, 402-403, 450-451, 453-455, 457-458, 462-466, 470-477, 480-506). Defendant controlled how, where, to whom, how much, and when to spend the $813,181,566 from the Class A, Select A, and the MRI holding accounts that came from the Japanese victims.

## II. FORFEITURE

### A. Criminal Forfeiture Money Judgments

The Court finds that the Government provided Defendant the required forfeiture notice of $1,599,335,710.94 for mail fraud and wire fraud and $116,346.65 for monetary transactions in property derived from specified unlawful activity. (*See* Indictment at 8–12, ECF No. 1); Fed. R. Crim. P. 32.2(a); 28 U.S.C. § 2461(c); *United States v. Lo*, 839 F.3d 777, 789–92 (9th Cir. 2016), *cert denied*, 138 S. Ct. 354 (2017); *United States v. Newman*, 659 F.3d 1235, 1239 (9th Cir. 2011), *cert denied*, 566 U.S. 915, *abrogated on other grounds by Honeycutt v. United States*, 137 S. Ct. 1626, 1631–35 (2017). Further, the Court finds that the statutes cited in the

Indictment of 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c), 18 U.S.C. § 981(a)(1)(A) with 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(1) authorize criminal forfeiture money judgments for Defendant's crimes. *Newman*, 659 F.3d at 1239–40, 1242; *Phillips*, 704 F.3d at 769, 771; *Casey*, 444 F.3d at 1076; Fed. R. Crim. P. 32.2(b)(1)(A); Fed. R. Crim. P. 32.2(b) advisory committee notes ("Subdivision (b)(1) recognizes that there are different kinds of forfeiture judgments in criminal cases. One type is a personal judgment for a sum of money; another is a judgment forfeiting a specific asset.").

### B. Amount of Forfeiture

The Government must prove the forfeitability of property by a preponderance of the evidence, and may use relevant and reliable hearsay. Rule 32.2(b)(1)(B); *Christensen*, 828 F.3d at 822; *United States v. Mancuso*, 718 F.3d 780, 798-99 (9th Cir. 2013); *United States v. Shryock*, 342 F.3d 948, 991 (9th Cir. 2003), *cert. denied*, 541 U.S. 965 (2004); *United States v. Hernandez-Escarsega*, 886 F.2d 1560, 1576-77 (9th Cir. 1989), *cert denied*, 497 U.S. 1003 (1990); Rule 32.2(b) advisory committee notes (2000) (stating "the government must establish the forfeitability of the property by a preponderance of the evidence."); *Libretti*, 516 U.S. at 38-39, 41 (explaining that forfeiture is part of sentencing); U.S.S.G. § 6A1.3(a) ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."); *United States v. Huckins*, 53 F.3d 276, 279 (9th Cir. 1995) (explaining that hearsay evidence may be used at sentencing where "some minimal indicia of reliability accompany a hearsay statement") (citation and quotation marks omitted) (quoting *United States v. Petty*, 982 F.2d 1365, 1369 (9th Cir.), *amended*, 992 F.2d 1015 (9th Cir. 1993))

The Court, not the jury, determines the criminal forfeiture money judgment amounts. *Libretti v. United States*, 516 U.S. 29, 49 (1995); *Lo*, 839 F.3d at 789–90; *United States v.*

*Christensen*, 828 F.3d 763, 821-22 (9th Cir. 2016), *cert. denied*, 137 S. Ct. 626 (2017), *abrogated on other grounds by Honeycutt*, 137 S. Ct. at 1631–35; *Phillips*, 704 F.3d at 769–71. Moreover, the "district court must impose a criminal forfeiture in the amount of the proceeds of the crime." *Newman*, 659 F.3d at 1239-40; *Lo*, 839 F.3d at 789-94; *Mancuso*, 718 F.3d at 798-99; *Casey*, 444 F.3d at 1076; *United States v. Monsanto*, 491 U.S. 600, 607 (1989). The Court's decision on the amount of forfeiture "may be based on evidence already in the record . . . and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B); *Newman*, 659 F.3d at 1244-45; *United States v. Pollard*, 103 F. Supp. 3d 1221, 1226 (D. Nev. 2015).

The Court finds that illegal proceeds are the total gross proceeds obtained, acquired, or possessed with dominion and control in a scheme of fraud and a conspiracy to commit a scheme of such fraud. *See* 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c); *Honeycutt*, 137 S. Ct. at 1632; *United States v. Christensen*, 828 F.3d 763, 822-24 (9th Cir. 2016); *Newman*, 659 F.3d at 1243; *Casey*, 444 F.3d at 1073–74, 1076; *Lo*, 839 F.3d at 792–94. Applying that finding to the facts in this case, the admitted trial exhibits of the fraudulent scheme to defraud the victims and the witnesses' trial testimony prove by a preponderance of the evidence that Defendant obtained, acquired, and possessed fraudulently obtained illegal proceeds of $813,181,566, of which he transacted or caused to be transacted through a financial institution, causing forfeiture of $116,346.65 for laundering. *See Honeycutt*, 137 S. Ct. at 1631. Evidence admitted at trial revealed that Defendant, as MRI's president and CEO, made or caused to be made numerous material misrepresentations and omissions in an effort to fraudulently obtain money from the victims. Further, Defendant controlled, determined, and accessed, or caused to be controlled, determined, and accessed, the fraudulently obtained proceeds in the Class A, Select A, and the MRI holding bank accounts from as early as January 2009 and continuing through April 2013. Defendant deposited, laundered, disbursed, and spent, or caused to be

deposited, laundered, disbursed, and spent, the fraudulently obtained proceeds from the mail fraud and wire fraud in the scheme and artifice to commit fraud on the Japanese victims. (PSR, at 4–8); (Indictment, ECF No. 1); (Jury Verdict, ECF No. 267); (11/7 MSTT, p. 74–106, 125–126, 130–131); (11/7 ASTT, p. 139–207); (11/8 TT, p. 21–28; 30–39, 43–84, 94–95, 99–100, 145–150); (11/19 TT, p. 18–29, 32–83); (Ex. 38, 47, 73, 75, 80, 106 A-106B, 109, 111A-111B, 124, 154, 157, 179, 185, 188, 203, 207, 217, 219-220, 223, 227-228, 230, 235, 237, 239, 241-243, 247-249, 253-254, 263, 265-267, 300-309, 310A-310B, 311-364; 366A-366E, 367-390, 400, 402-403, 450-451, 453-455, 457-458, 462-466, 470-477, 480-506).[1]

The Court accordingly grants criminal forfeiture money judgments against Defendant in the amount of $813,181,566 for fraud and $116,346.65 for financial transactions with illegal proceeds pursuant to 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c), 18 U.S.C. § 981(a)(1)(A) with 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(1).[2]

## III. <u>DOUBLE JEOPARDY CLAUSE</u>

The Double Jeopardy Clause of the Fifth Amendment "protects only against the imposition of multiple *criminal* punishments for the same offense, and then only when such occurs in successive proceedings." *Hudson v. United States*, 522 U.S. 93, 98–99 (1997) (citations omitted); *Helvering v. Mitchell*, 303 U.S. 391, 399 (1938); *U.S. ex rel. Marcus v. Hess*, 317 U.S. 537, 549 (1943); *Breed v. Jones*, 421 U.S. 519, 528 (1975); *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *United States v. Hickey*, 367 F.3d 888, 892 (9th Cir. 2004), *opinion*

---

[1] The Court finds that *Honeycutt* does not apply to the criminal forfeiture money judgment of $116,346.65 for the financial transactions. That is, the Government cites 18 U.S.C. § 981(a)(1)(A) with 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(a)(1) as authority for forfeiture of property "involved in" monetary transactions of illegal proceeds by a criminal in a financial institution. Those statutes do not use "obtain," "acquired," or "possessed."

[2] The Court finds that there is no constitutional or statutory right to a jury determination of the criminal forfeiture money judgment amount. *See Libretti v. United States*, 516 U.S. 29, 49 (1994); *Christensen*, 828 F.3d at 821–22; *Phillips*, 704 F.3d at 769-71. Additionally, the Court finds no statutory right exists for a jury to decide criminal forfeiture money judgments. *See* Fed. R. Crim. P. 32.2(b)(1)(A) and (B), (b)(2)(A), and (b)(5)(A) and (B); *Christensen*, 828 F. 3d at 822; *Phillips*, 704 F.3d at 771; *Newman*, 659 F.3d at 1242–43.

*amended on denial of reh'g*, 400 F3d. 658 (9th Cir. 2005). In criminal cases, the court may or must, depending on the statutes, sentence the defendant with a special assessment, a fine, the cost of imprisonment, the cost of residential re-entry center, the cost of supervised release, restitution, and forfeiture. *See* 18 U.S.C. § 981 with 28 U.S.C. §§ 2461(c), 982, 1963, 3013, 3554, 3556, 3571, 3572, 3574, 3611, 3663, 3663A(a)(1), and 3664; U.S.S.G. §§ 5E1.1, 5E1.2, and 5E1.2(d)(7); and 21 U.S.C. §§ 853 and 881 with 28 U.S.C. § 2461(c); *Newman*, 659 F.3d at 1239-40; *Hunter*, 618 F.3d at 1064). Courts do not reduce or eliminate criminal forfeiture amounts because it ordered restitution or because the defendant paid restitution partially or completely. *United States v. Boulware*, 384 F.3d 794, 813 (9th Cir. 2004), *cert. denied*, 546 U.S. 814 (2005).

Double Jeopardy is not violated in this case because the Court orders restitution and forfeiture at the same proceeding in a single criminal prosecution.[3] *See* 18 U.S.C. §§ 3663A and 3664; Rule 32.2(b)(2)(B) and (b)(4)(A). Moreover, "[c]riminal forfeiture is separate from the discretionary sentencing consideration under 18 U.S.C. § 3551," which incorporates by reference the sentencing factors of 18 U.S.C. § 3553(a). *Newman*, 659 F.3d at 1240. "Criminal forfeiture is also separate from restitution, which serves an entirely different purpose" since restitution focuses on making the victim whole again. *Id.* at 1241–42; *United Sates v. Hunter*, 618 F.3d 1062, 1064 (9th Cir. 2010); *United States v. Davis*, 706 F.3d 1081, 1082-84 (9th Cir. 2013). Relatedly, ordering forfeiture and restitution is not a double recovery "[e]ven if the same government entity will receive both forfeiture and restitution." *Davis*, 706 F.3d at 1084.

## IV. <u>EIGHTH AMENDMENT, EXCESSIVE FINES</u>

In *United States v. Feldman*, 853 F.2d 648 (9th Cir. 1988), the Ninth Circuit adopted the grossly disproportionate analysis for the Cruel and Unusual Punishments Clause and the

---

[3] The Court ordered Defendant to pay $1,129,909,449.00 in restitution. To support that decision, the Court incorporates its findings as stated on the record at the time of sentencing into this Order.

Excessive Fines Clause of the Eighth Amendment. *Feldman*, 853 F.2d at 663–64. In that decision, the Ninth Circuit observed, "[w]hen the district court orders that the defendant forfeit the profits gained from illegal activity, it is hard to imagine how such a forfeiture could constitute cruel and unusual punishment." *Feldman*, 853 F.2d at 663 (citation omitted; brackets added).

After *Feldman*, the United States Supreme Court decided *United States v. Bajakajian*, 524 U.S. 321 (1998). In *Bajakajian*, the reporting violation forfeiture, now codified at 31 U.S.C. § 5317(c)(1), was considered punishment. *Bajakajian*, 524 U.S. at 327–28 (citing *Austin*, 509 U.S. at 609-10 and 619). As discussed during the hearing on forfeiture in this case, *Bajakajian* creates an issue about the present viability of the theory and reasoning of *Feldman* and related decisions concerning violations of the Eighth Amendment. Even after *Bajakajian*, however, a three-judge panel in *United States v. 22 Santa Barbara*, 264 F.3d 860 (9th Cir. 2001), followed the reasoning of *Feldman*. The *22 Santa Barbara* panel implicitly agreed with *Feldman*, and other circuit cases, that held illegal proceeds do not violate the Cruel and Unusual Punishments Clause or the Excessive Fines Clause because, based on the illegal proceeds analysis, illegal proceeds are not grossly disproportionate. The *22 Santa Barbara* panel distinguished between illegal proceeds and facilitating property, as did *Feldman*, when determining that "the Eighth Amendment does not apply to a forfeiture action brought under 21 U.S.C. § 881(a)(6)," which is a statute that makes subject to forfeiture "all proceeds traceable to" a drug transaction. *See 22 Santa Barbara*, 264 F.3d at 875.

Here, the Court finds that *Bajakajian* is not clearly irreconcilable with *Feldman* nor *22 Santa Barbara*. Further, as one court in this District has already stated, other decisions of three-judge panels in this circuit which challenge the legal theory and reasoning in *Feldman* did

not undergo the law-of-the-circuit analysis[4] to overturn *Feldman*. *See United States v. Brandel*, No. 2:13-CR-439-KJD-VCF, 2019 WL 2110504, at *8 (D. Nev. May 14, 2019) (discussing the precedential value of *Feldman* and *22 Santa Barbara Street* in comparison with *United States v. 3814 NW Thurman Street*, 164 F.3d 1191 (9th Cir. 1999), *United States v. Beecroft*, 825 F.3d 991 (9th Cir. 2016), and *United States v. Mosley*, 652 F. App'x 511 (9th Cir. 2016)). Accordingly, the Court's order of forfeiture in the amount of $813,181,566 and $116,346.65 does not violate the Eighth Amendment, as Defendant's illegal proceeds are not legal livelihood, not legally owned property, not instrumentalities, not a reporting violation, and not facilitating property.

### A. Grossly Disproportionate under *United States v. Bajakajian*

*Bajakajian* held that a reporting violation forfeiture was punishment. *See Bajakajian*, 524 U.S. at 327–28 (citing *Austin*, 509 U.S. at 609–10, 619). *Bajakajian* adopted the Cruel and Unusual Punishments Clause grossly disproportionate analysis for the Excessive Fines Clause for reporting violation forfeitures. *See id.* at 334–40 (citing *Solem*, 463 U.S. at 288; *Rummel v. Estelle*, 445 U.S. 263, 271 (1980)). The Court in *Bajakajian* stated,

> The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish. . . . [A] punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense.

*Bajakajian*, 524 U.S. at 334. Accordingly, in *Bajakajian*, the Supreme Court considered four factors in weighing the gravity of the defendant's offense to determine the presence of an Eighth Amendment violation: "(1) the nature and extent of the crime, (2) whether the violation was related to other illegal activities, (3) the other penalties that may be imposed for the

---

[4] The law-of-the-circuit rule states, "a published decision of this court constitutes binding authority which 'must be followed unless and until overruled by a body competent to do so.'" *Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc) (quoting *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001)).

violation, and (4) the extent of the harm caused." *United States v. $100,348.00 In United States Currency*, 354 F.3d 1110, 1122 (9th Cir. 2004) (citation and quotation marks omitted) (a currency reporting violation forfeiture). Moreover, Defendant must make a prima facie showing of an Eighth Amendment violation. *See Feldman*, 853 F.2d at 663; *United States v. Ladum*, 141 F.3d 1328, 1349 (9th Cir. 1998); *Newman*, 659 F.3d at 1241 n.4.

### B. Application of *United States v. Bajakajian*

Even when applying the grossly disproportionate test in *Bajakajian* to the forfeiture orders of $813,181,566 and $116,346.65, Defendant has not demonstrated an Eighth Amendment violation.

#### i. The Nature and Extent of the Crime

The jury found Defendant guilty of financial transactions of illegal proceeds and a scheme to commit mail fraud and wire fraud. (Indictment, ECF No. 1); (Trial Minutes, ECF No. 262); (Jury Verdict, ECF No. 267). The illegal proceeds of $813,181,566 and $116,346.65 were not Defendant's, but belonged to the Japanese victims. Defendant's crimes caused excessive harm, damage, and significant loss to victims. (PSR, p. 15-16, 18-19).

#### ii. The Violation Related to Other Illegal Activities

Defendant obtained, acquired, or possessed the illegal proceeds of $813,181,566 from the Japanese victims; decided how, when, how much, and where to disburse the $813,181,566 for others' and his personal use; and committed financial transactions. Defendant is the type for whom the criminal forfeiture statutes were designed: those committing mail fraud and wire fraud to obtain victims' funds and making financial transactions with the illegal proceeds.

#### iii. The Other Penalties That May Be Imposed

Congress authorized a maximum sentence of 10 years for each count of 18 U.S.C. § 1957 and 20 years for each count of conviction under 18 U.S.C. §§ 1341 and 1343, totaling 4,440 months (370 years). (Presentence Investigation Report (PSR), p. 2, 13, 18). Congress

authorized a fine of $250,000 for § 1957 and $250,000 or $2,259,818,898—twice the loss of $1,129,909,449—for §§ 1341 and 1343. 18 U.S.C. §§ 1341, 1343, 3571(b)(3), 3571(b)(2) and (d) (explaining "if the loss results in to a pecuniary loss to a person other than the defendant," the defendant's fine is "not more than … twice the gross loss …."); (PSR, p. 9-10, 13-16, 18). The Congressional imprisonment and fine show the serious gravity of Defendant's crimes.

Defendant's estimated sentencing guidelines is offense level 51 but was reduced to 43 with imprisonment for life, but the statute limits it to 370 years. (PSR, p. 9-10, 13-14, 18). The fine for an offense level of 43 is $25,000 to $2,259,818,898. U.S.S.G. § 5E1.2(c)(1-4); 18 U.S.C. § 3571(b)(1), b(2) and (d). The USSG imprisonment and fines show the serious gravity of Defendant's crimes.

The forfeitures of $813,181,566 and $116,346.65 are less than the maximum fine of $2,259,818,898, and is presumptively constitutional. *United States v Grossi*, 359 F. App'x 830, 832 (9th Cir. 2009) (citing *Bajakajian*, 524 U.S. at 326). In *Grossi*, the court determined the forfeited property was worth $345,347.28, and since "the relevant criminal statute and Sentencing Guidelines permit fines in excess of $345,347.28 for Grossi's crime[,] . . . Grossi's forfeiture is presumptively constitutional." *Id*. (citations omitted). "[I]f the value of the forfeited property is within the range of fines prescribed by Congress, a strong presumption arises that the forfeiture is constitutional." *United States v. 817 N.E. 29th Street, Wilton Manors, Fla.*, 175 F.3d 1304, 1309 (11th Cir. 1999); *United States v. Dicter*, 198 F.3d 1284 (11th Cir. 1999); *United States v. Moyer*, 313 F.3d 1082 (8th Cir. 2002); *United States v. Wallace*, 389 F.3d 483, 486 (5th Cir. 2004); *United States v. Bernitt*, 392 F.3d 873, 880-81 (7th Cir. 2004); *United States v. Heldeman*, 402 F.3d 220, 223 (1st Cir. 2005) ("Some circuits have treated a forfeiture of less than the statutory or guideline maximum as strongly suggesting or conclusive of compliance with the Eighth Amendment."); *United States v. Elfgeeh*, 515 F.3d 100, 139 (2d Cir. 2008). "[I]f the value of the property forfeited is within or near the

permissible range of fines under the sentencing guidelines, the forfeiture almost certainly is not excessive." *817 N.E. 29th Street*, 175 F.3d at 1310 (citations omitted; brackets added).

When applying the gross disproportionality analysis, the amount that can be forfeited is a multiple of the maximum amount of the fine. *$100,348*, 354 F.3d 1110, 1122–24 (9th Cir. 2004) (inferring two times the Sentencing Guidelines maximum fine of $5,000 is not grossly disproportionate); *Mackby*, 339 F.3d 1013, 1015, 1017 (9th Cir. 2003) (a multiple of more than 12.5 times the amount of the loss); *United States v. $132,245 in Untied States Currency*, 764 F.3d 1055, 1060 (9th Cir. 2014) ("[F]orfeiture does not per se violate the Eighth Amendment simply because the amount to be forfeited exceeds the maximum fine under the Sentencing Guidelines."); *United States v. Riedl*, 82 F. App'x 538 (9th Cir. 2003) (in a drug and money laundering case, finding a forfeiture order of 12 to 13 times the maximum sentencing guideline fine was not excessive). Other Courts have found that multiples of the sentencing guidelines are not grossly disproportionate. *United States v. Cheeseman*, 600 F.3d. 270, 284-85 (3rd Cir. 2010); *Wallace*, 389 F.3d at 486 (a multiple of two is not grossly disproportionate); *United States v. Porcelli*, 440 F. App'x 870, 879 (11th Cir. 2011) ("[T]hree times the statutory maximum and four-and-a-half times" guideline maximum is not excessive).

Based on the *Bajakajian* analysis, the Court finds that, since the statutory fine and the sentencing guidelines fine is $2,259,818,898, the forfeiture amounts of $813,181,566 and $116,346.65 are presumptively not excessive and do not violate the Excessive Fines Clause because it is less than .36 or 36% of the fine.

    **iv. Extent of Harm Caused**

As explained in the Court's factual findings above, a substantial number of the victim investors were elderly individuals. Moreover, many of Defendants victims were significantly impacted, causing them to reenter the work force to sustain a living. (PSR, p. 5-8); (Indictment, ECF No. 1); (Trial Minutes, ECF No. 262); (Jury Verdict, ECF No. 267). The fraudulent

scheme caused many investors irreparable financial harm. Indeed, Defendant's crimes were grave. *See Bajakajian*, 524 U.S. at 336, 338–39.

## V. **EIGHTH AMENDMENT, CRUEL AND UNUSUAL PUNISHMENT**

Defendant's total punishment, including the forfeiture and the restitution, is not grossly disproportionate and does not violate the Excessive Fines Clause or the Cruel and Unusual Punishments Clause of the Eighth Amendment.[5] Defendant's total punishment versus the recommended punishment are the following:

| | |
|---|---|
| Congressional Maximum Imprisonment: | 370 years; 18 U.S.C. §§ 1341, 1343, 1957 |
| U.S.S.G. Maximum Imprisonment: | 370 years; PSR, p. 11-13, 19-22 |
| Recommended Imprisonment: | 40 years; PSR, p. 16, 18, 19 |
| Actual Sentence: | 50 years |
| Congressional Maximum Fine: | $2,259,818,898; 18 U.S.C. §§ 1341, 1343,1957 3571(b)(1), b(2) and (d) |
| U.S.S.G. Maximum Fine: | $2,259,818,898; 18 U.S.C. § 3571(b)(1), b(2) (d); and U.S.S.G. § 5E1.2(c)(1-4) |
| Recommended Fine: | $0; PSR, p. 13, 18, 19 |
| Actual Fine: | $0 |
| Special Assessment | $2000; 18 U.S.C. § 3013; PSR, p. 14, 19; |
| Forfeiture | $813,181,566 and $116,346.65; |
| Restitution | $1,129,909,449; 18 U.S.C. § 3663A; Testimony; evidence; and PSR p. 8,13, 15, 18, 19 |
| Actual Restitution | $1,129,909,449 |
| Congressional Max. Supervised Release | 3 years; USSG §§ 5D1.2(a)(2) and 5E1.2(d)(7); 18 U.S.C. §§ 3572(a)(6), 3583(b)(2) and 3642(e); PSR, p. 13-14, 16-19 |

---

[5] Since restitution is not punishment, *United States v. Davis*, 706 F.3d 1081, 1084 (9th Cir. 2013); *Newman*, 659 F.3d at 1241; *United States v. Hunter*, 618 F.3d 1062, 1064 (9th Cir. 2010), the Court ordering the payment of restitution and forfeiture does not violate the Excessive Fines Clause or Cruel and Unusual Punishments Clause of the Eighth Amendment because it is already inherently proportional and is inherently linked to the offender's culpability. *Beecroft*, 825 F.3d at 997; *United States v. Dubose*, 146 F.3d 1141, 1147 (9th Cir. 1998).

| | |
|---|---|
| U.S.S.G. Maximum Supervised Release | 3 years: USSG § 5D1.2(a)(2); PSR, p. 19; |
| Actual Supervised Release | 3 years |

The Court finds that Defendant's 50-years imprisonment is well within the statutory 370 years and is less than the U.S.S.G. life sentence. The Court did not order a fine as part of Defendant's sentence, although the Congressional and U.S.S.G. maximum fine was $2,259,818,898. The forfeiture is less than .36 or 36% of the fine. While restitution of $1,129,909,449 is not punishment, the restitution of $1,129,909,449 and the forfeiture order of $813,181,566 and $116,346.65, based on the fine that was not ordered, as combined are less than .86 or 86% of the fine. *See Davis*, 706 F.3d at 1084; *Newman*, 659 F.3d at 1241; *Hunter*, 618 F.3d at 1064.

Since Defendant's total punishment (fines, imprisonment, etc.) is much less than what the Court could have sentenced Defendant, the Court finds that Defendant's total punishment is not grossly disproportionate and does not violate the Excessive Fines Clause or the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Feldman*, 853 F.2d at 664; *Busher*, 817 F.2d 1409. The Court finds the criminal forfeiture money judgments are (1) any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. §§ 1341 and 1343, specified unlawful activities as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(B), or a conspiracy to commit such offense; (2) any property, real or personal, involved in transactions or attempted transactions in violation of 18 U.S.C. § 1957, or any property traceable to such property; (3) any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1957, a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(B), or a conspiracy to commit such offense; and (4) any property, real or personal, involved in violations of 18 U.S.C. § 1957, or any property traceable to such property, and are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(A) with 28 U.S.C.

§ 2461(c); 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c); 18 U.S.C. § 982(a)(1); and 21 U.S.C. § 853(p).

## VI. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant Edwin Fujinaga shall pay the criminal forfeiture money judgments of $813,181,566 for mail fraud and wire fraud and $116,346.65 for financial transactions of illegal proceeds pursuant to Fed. R. Crim. P. 32.2(b)(1) and (2); 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(A) with 28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c); 18 U.S.C. § 982(a)(1); and 21 U.S.C. § 853(p). (Criminal Indictment, ECF No. 1); (Minutes of Jury Trial, ECF No. 262); (Jury Verdict, ECF No. 267).

**IT IS FURTHER ORDERED** that the Government recover from Defendant Edwin Fujinaga the criminal forfeiture money judgments of $813,181,566 for mail fraud and wire fraud and $116,346.65 for financial transactions of illegal proceeds, not to be held jointly and severally liable with any codefendants, and the collected money judgment amount between the codefendants is not to exceed $1,129,909,449 pursuant to Fed. R. Crim. P. 32.2(b)(4)(A) and (B); 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(A) with 28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c); 18 U.S.C. § 982(a)(1); and 21 U.S.C. § 853(p).

**IT IS FURTHER ORDERED** that the Government may amend this order at any time to add subsequently located property or substitute property to the forfeiture order pursuant to Fed. R. Crim. P. 32.2(b)(2)(C) and 32.2(e).

///

///

///

///

**IT IS FURTHER ORDERED** that the Clerk of Court shall send copies of this Order to all counsel of record and three certified copies to the United States Attorney's Office, Attention Asset Forfeiture Unit.

**DATED** this __17__ day of June, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Court