RENE L. VALLADARES
Federal Public Defender
Nevada State Bar No. 11479
Cristen C. Thayer
Assistant Federal Public Defender
411 E. Bonneville, Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577
Cristen_Thayer@fd.org

Attorney for Edwin Fujinaga

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| United States of America, | |
| Respondent/Plaintiff, | Case No. 2:15-cr-00198-GMN-NJK-1 |
| v. | **Stipulation to Correct Omission from Record** |
| Edwin Fujinaga, | |
| Petitioner/Defendant. | |

It is stipulated and agreed, by and between William E. Johnston, Assistant

United States Attorney, counsel for the United States of America, and

Cristen C. Thayer, Assistant Federal Public Defender, counsel for

Edwin Fujinaga, that the record should be corrected to include the government's

PowerPoint used during closing arguments at Mr. Fujinaga's trial.  *See*

Attachment A, Government's Closing Argument PowerPoint.

This stipulation is entered into for the following reasons:

1.  Mr. Fujinaga was convicted of multiple counts by the jury after a 17-day

trial and sentenced to 50 years in prison.  His direct appeal of that conviction and

sentence is pending, with the Opening Brief due August 24, 2020.

2.  Before the government's closing, Mr. Fujinaga's counsel objected to a

slide in the government's closing argument, which this Court overruled.  *See* ECF

No. 262, Trial Day 17.  Though counsel provided a copy of the objected-to slide for the Court to review during the objection, the slide was inadvertently not made part of the official record in this matter.

4.    Under Federal Rule of Appellate Procedure 10(e)(2), the Court may correct a material omission from the record by stipulation of the parties. Undersigned counsel therefore jointly request the Court order that that government's PowerPoint presentation used during closing arguments at trial be made part of the record.

DATED:  August 12, 2020.

RENE L. VALLADARES
Federal Public Defender

By */s/Cristen C. Thayer*
CRISTEN C. THAYER
Assistant Federal Public Defender

NICHOLAS A. TRUTANICH
United States Attorney

By */s/ William E. Johnston*
WILLIAM E. JOHNSTON
Assistant United States Attorney

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

United States of America,

      Plaintiff,

    v.

Edwin Fujinaga,

      Defendant.

Case No. 2:15-cr-00198-GMN-NJK-1

**Order Granting Stipulation to Correct Ommission from Record**

      Based on the stipulation of counsel, the Court finds that good cause exists to correct the omission from the record under Federal Rule of Appellate Procedure 10(e).  **IT IS HEREBY ORDERED** that the government's PowerPoint presentation used during closing arguments at trial, *see* Attachment A to the Stipulation to Correct Omission from Record, is hereby made part of the record in this matter.   The Court accordingly **GRANTS** the Stipulation, (ECF No. 395).

      DATED: August __13__, 2020.

                                _____
                                  Gloria M. Navarro, District Judge
                                  UNITED STATES DISTRICT COURT

EXHIBIT "A"

EXHIBIT "A"

*United States v. Edwin Fujinaga*

Pre-Contract Documents

2012 Edition

MRI Series Select A Version

Financial Products Trading Contract

## Article 4 (Basic obligations of Party B)

1. Party B shall manage the Investment Amount through a trust account established at escrow and a lockbox account for collections received from purchased receivables. Funds are used for purchasing MARS only.

- Based on this Agreement, we will use your investment money only to purchase medical account receivables. If the insurance company underwriting the credit recovery were to become insolvent due to financial difficulty or the like, if among the purchased credits there is a medical account receivable that has a value exceeding the guaranteed minimum set by the state in which the receivable was generated, only the guaranteed minimum may be collected for such receivable, and therefore, a loss may occur.

www.mars-toushi.com

GOVERNMENT EXHIBIT 115 2:15-CR-00198-GMN

DOJ_PROD_TRN_00001129

GOVERNMENT EXHIBIT 115 2:15-CR-00198-GMN

GOVERNMENT EXHIBIT 178 2:15-CR-00198-GMN

## Escrow Agent

In order to maintain fairness in transactions in the United States, this system is employed by many parties that do business with each other. In high-value transactions, the agent is introduced as a strictly neutral third-party intermediary between the buyer and seller to protect the profits of both parties. This agent manages the proceedings so that the terms of the contract are strictly followed.

## Lock Box Account

This special type of account is opened by companies for collection of various types of claims. To move the money in this account, it is required that funds of equal or greater value be deposited. When opening the account, a careful investigation is conducted of the company's capitalization, condition, reason for opening the account, and other matters.

**GOVERNMENT EXHIBIT**

**9**

2:15-CR-00198-GMN






Case 2:15-cr-00198-GMN-NJK   Document 395-1 Filed 08/13/20   Page 10 of 126



We started the sales of the MRI Series, the MARS investment instruments, to individual investors in 1998 as part of our MARS collection business.

"MARS investment product" may sound unfamiliar to Japanese investors.

However, I am confident that when our investors understand the structure and its secure mechanisms, the MRI Series will be acknowledged as a profitable investment product.

Our investors' satisfaction is the prime concern of MRI International.

I am sure that MRI Series will offer you opportunities to enjoy good-quality life.

We are committed to further develop our MARS business to share happiness with our investors as supporting the U.S. medical providers.



Edwin Y. Fujinaga
President & CEO
Edwin Y. Fujinaga

GOVERNMENT
EXHIBIT
50
2:15-CR-00198-GMN

Pre-Contract Documents

2012 Edition

MRI Series Select A Version

**Article 4 (Basic obligations of Party B)**

1. Party B shall manage the Investment Amount through a trust account established at escrow and a lockbox account for collections received from purchased receivables. Funds are used for purchasing MARS only.

- Based on this Agreement, we will use your investment money only to purchase medical account receivables. If the insurance company underwriting the credit recovery were to become insolvent due to financial difficulty or the like, if among the purchased credits there is a medical account receivable that has a value exceeding the guaranteed minimum set by the state in which the receivable was generated, only the guaranteed minimum may be collected for such receivable, and therefore, a loss may occur.

www.mars-toushi.com

GOVERNMENT EXHIBIT 115 2:15-CR-00198-GMN

DOJ_PROD_TRN_00001129

GOVERNMENT EXHIBIT 115 2:15-CR-00198-GMN

GOVERNMENT EXHIBIT 178 2:15-CR-00198-GMN

Flow of MRI MARS investments



1. Funds are transferred to Wells Fargo Bank deposit accounts that have been opened by Sterling Escrow.

2. Investment funds are used exclusively for purchasing MARS.
   (The investor has the primary right for the MARS that have been purchased.)

3. By order of the escrow agent that is managing the funds, MARS are transferred as collateral to a lock box account in value that is equal or greater to the funds invested.

4. Claims are processed for MARS.

5. MARS claims are collected and the medical accounts are paid.
   (The medical accounts paid into the lock box account are first reserved for the yields paid to the investor by order of the escrow agent.)

6. The promised yields are paid from the high rate of claims collected (medical accounts).

**Escrow Agent**

In order to maintain fairness in transactions in the United States, this system is employed by many parties that do business with each other. In high-value transactions, the agent is introduced as a strictly neutral third-party intermediary between the buyer and seller to protect the profits of both parties. This agent manages the proceedings so that the terms of the contract are strictly followed.

**Lock Box Account**

This special type of account is opened by companies for collection of various types of claims. To move the money in this account, it is required that funds of equal or greater value be deposited. When opening the account, a careful investigation is conducted of the company's capitalization, condition, reason for opening the account, and other matters.

**GOVERNMENT EXHIBIT**

**9**

**2:15-CR-00198-GMN**

| Secure mechanism | **1** | # MRI International was the first to utilize "escrow" in its fund structure in the MARS investment field. |
|---|---|---|

Escrow is the unique and credible system which is effectively used in the U.S. in various business transactions such as real estate dealings. Escrow companies are credible institutions which are authorized and licensed by a state government to operate escrow businesses. An escrow audits business transactions between a buyer and a seller as a "credible third party" with fairness and security. MRI International employs "Escrow" for thorough transparency in its cash-flow.

| Secure mechanism | **2** | # Invested funds are separately deposited in lockbox account |
|---|---|---|

"Lockbox account" is a bank account particularly designed for debt-collection transactions. To open a lockbox account, a collection company needs to meet the strict standards by the bank. The account balance is managed in the way that the deposits can be withdrawn only when a receivable with the same value or more is deposited in exchange. The deposit in a lockbox account is separately managed from bank's assets and the state's banking law insures deposits inside a lockbox account when a bank becomes insolvent.

GOVERNMENT
EXHIBIT
**50**
2:15-CR-00198-GMN

# MRI International Tutorial

## The beginning guide for new investors of the MRI Series

### Series 1 "Escrow"

MRI Series. "Escrow" is one of the strongpoint of the MRI Series, so we hope this article makes it easier for you to explain about it. This article is written from new viewpoints, even

### Why is escrow important?

Please look at the name of the bank account to which you transfer investment fund of the MRI Series. ... the account ... not "MRI ... the trustee's ... pened and audited by the escrow company, which means your investment fund is safely separated from MRI's capital by the third party. The escrow company makes sure that your fund is used only for purchasing MARS as contracted with MRI International, which

GOVERNMENT
EXHIBIT
84
2:15-CR-00198-GMN





GOVERNMENT
EXHIBIT
84
2:15-CR-00198-GMN

②    Credit Risk

- The money you are going to invest on the basis of this Agreement will be the trust asset of the escrow company that is our trustee (currently, Sterling Escrow). Changes in circumstances relating to the management or financial situation or the receivables recovery technology of the Company, which actually performs the operations relative to medical account receivables as the invested business, or changes in the assessment of those situations by a third party, may cause changes in the Company's credit situation. These changes may interfere with the agreements to purchase medical account receivables with medical service providers and lead to a risk that the sum of the distributions of profit and property based on this Agreement may fall below the investment principal.

- The property involved in the medical account receivables we purchase under this Agreement will be separated from the specific property held by the Company, and segregated to be managed in an account in trust of a third party escrow company which is approved by the government of the state of Nevada of the United States (currently, Sterling Escrow). If a change in the credit status of the escrow company occurs, due to the escrow company's change in financial condition or the audit results of the state government relating thereto, difficulty in fund management under this Agreement which may lead to an interruption in distribution of dividend of profit or assets under this Agreement may occur.

- Based on this Agreement, we will use your investment money only to purchase medical account receivables. If the insurance company underwriting the credit recovery were to become insolvent due to financial difficulty or the like, if among the purchased credits there is a medical account receivable that has a value exceeding the guaranteed minimum set by the state in which the receivable was generated, only the guaranteed minimum may be collected for such receivable, and therefore, a loss may occur.

GOVERNMENT
EXHIBIT
115
2:15-CR-00198-GMN

# Financial Products Trading Contract

The said customer ("Party A") has applied for the offering made by MRI INTERNATIONAL, INC. ("Party B") in respect to the equity in the group investment scheme, Party A and Party B shall conclude the financial products trading contract ("Contract") as follows.

To conclude this agreement, the Party A will receive Documents Delivered Prior to Contract issued by the Party B and sign the contract with the comprehension of the content.

## Article 4 (Basic obligations of Party B)

1. Party B shall manage the Investment Amount through a trust account established at escrow and a lockbox account for collections received from purchased receivables. Funds are used for purchasing MARS only.

2. For the benefit of Party A, Party B shall execute distribution of the profit during the profit distribution period (In the case of Option A: a one year period from the day after the full investment amount has been deposited. In the case of Option B: the period is from the day after the investment amount is fully deposited to the maturity date stated in the Certificate of Investment issued in accordance with the Contract. The same is true hereinafter) and in accordance to the following classification. Distribution shall be made based on the profit that Party B obtained through the Business Covered by the Investment (Profit available for Dividends), after the disbursement of contracted interest to Party A. The management and operating cost shall be subtracted from the remaining gross profit of Party B. The distribution of said profit is paid by transfer or remittance to the bank account designated by Party A at least two weeks before Party B's remittance ("Account Designated by Party A"). For the purpose of this Article, the fees for payments made in United States shall be borne by Party B, while those necessary for other transfers or remittances shall be borne by Party A.

GOVERNMENT
EXHIBIT
178
2:15-CR-00198-GMN

## Article 1 (Purpose)

1. Party A shall invest money ("Invested Amount") with Party B as capital to purchase Medical Accounts Receivables ("MARS"), which Party B will buy from medical industry.

2. Party B uses the contributed money to buy MARS and execute collections ("Business Covered by the Investment"), distributing part of the profit generated from the Business Covered by the Investment to Party A and returns the Invested Amount upon the expiration of the Contract term.

**GOVERNMENT EXHIBIT**

**178**

2:15-CR-00198-GMN

**Article 1 (Purpose)**

1. Party A shall invest money ("Invested Amount") with Party B as capital to purchase Medical Accounts Receivables ("MARS"), which Party B will buy from medical industry.

2. Party B uses the contributed money to buy MARS and execute collections ("Business Covered by the Investment"), distributing part of the profit generated from the Business Covered by the Investment to Party A and returns the Invested Amount upon the expiration of the Contract term.

**Article 1 (Purpose)**

1. Party A shall invest money ("Invested Amount") with Party B as capital to purchase Medical Accounts Receivables ("MARS"), which Party B will buy from medical industry.

2. Party B uses the contributed money to buy MARS and execute collections ("Business Covered by the Investment"), distributing part of the profit generated from the Business Covered by the Investment to Party A and returns the Invested Amount upon the expiration of the Contract term.

GOVERNMENT
EXHIBIT
**178**
2:15-CR-00198-GMN

# Let's see a bad and good examples of a way to manage investors' funds.

**Company A**

The company A did not separate investors' funds from company capital. Let's see what happens···.

illustration : Kaori Shibata







This is a bad example of fund management in which consumers' funds were not separated from company's capital.

GOVERNMENT
EXHIBIT
84
2:15-CR-00198-GMN

## Article 1 (Purpose)

1. Party A shall invest money ("Invested Amount") with Party B as capital to purchase Medical Accounts Receivables ("MARS"), which Party B will buy from medical industry.

2. Party B uses the contributed money to buy MARS and execute collections ("Business Covered by the Investment"), distributing part of the profit generated from the Business Covered by the Investment to Party A and returns the Invested Amount upon the expiration of the Contract term.

## Article 4 (Basic obligations of Party B)

1. Party B shall manage the Investment Amount through a trust account established at escrow and a lockbox account for collections received from purchased receivables. Funds are used for purchasing MARS only.

2. For the benefit of Party A, Party B shall execute distribution of the profit during the profit distribution period (In the case of Option A: a one year period from the day after the full investment amount has been deposited. In the case of Option B: the period is from the day after the investment amount is fully deposited to the maturity date stated in the Certificate of Investment issued in accordance with the Contract. The same is true hereinafter) and in accordance to the following classification. Distribution shall be made based on the profit that Party B obtained through the Business Covered by the Investment (Profit available for Dividends), after the disbursement of contracted interest to Party A. The management and operating cost shall be subtracted from the remaining gross profit of Party B. The distribution of said profit is paid by transfer or remittance to the bank account designated by Party A at least two weeks before Party B's remittance ("Account Designated by Party A"). For the purpose of this Article, the fees for payments made in United States shall be borne by Party B, while those necessary for other transfers or remittances shall be borne by Party A.

GOVERNMENT
EXHIBIT
178
2:15-CR-00198-GMN



# FAX

| | | | |
|---|---|---|---|
| 送付先: | Mr. Fujinaga | 発信元: | Paul Suzuki |
| FAX 番号: | 702-363-1957 | 送付枚数: | 7 |
| 電話番号: | | 日付: | 3/25/07 |
| 件名: | MRI Seminar | | |

Dear Mr. Fujinaga,

I have attached the final script for our seminar beginning from April 8th. Please revise the script and if there is no correction, please sign the approval section on the last page. I have looked over the script, and I am concerned about 1 information, this past 8 years we have told the investors that the collected funds are used directly to purchase MARS. If we were to disclose any specific information about Four Seasons Medical Group, I must need all information and a legal back up to educate my staff in Japan to be prepared for any questions. Our biggest sales point in Japan is the safety of the funds collected. The second biggest sales point is that we use the funds to purchase only MARS (with the right technology and the right personnel, a very reliable receivable to invest in). I hate to rush with such important matter but it will be very grateful if you can fax me your revised version with your approval as soon as possible to Keiko's private fax in Japan.

Thank you very much for your time,

Paul Suzuki

GOVERNMENT EXHIBIT
25
2:15-CR-00198-GMN



2-14-3 NAGATACHO AKASAKA TOKYU BLDG.6D
TOKYO JAPAN 100-0014
TEL:03-5510-4081 FAX03-3509-1581

**MRI INTERNATIONAL,INC**

# FAX



| TO : | EDWIN FUJINAGA | FROM : | KEIKO SUZUKI |
|---|---|---|---|
| FAX NO : | 702-383-1957 | PAGES : | (Including cover sheet) 1 page |
| PHONE : | 702-396-8822 | DATE : | 3/16/2009 |
| RE : | INQUIRY | CC : | Richard |

☑ URGENT !  ☐ REVIEW     ☐ COMMENT        ☐ PLEASE REPLY  ☐ RECYCLE

Dear Mr. Fujinaga

One of our consumers has contacted the Kanto Finance Bureau and asked to see relative documents that state MRI is using the fund only for MARS, the intended investment product.

submit such documents.

I do not know what type of documents will be qualified as evidentiary documents, but I think that we need documents (such as some form of a receipt or purchase note or purchasing contract ) from a third party stating such fact and not a MRI approved letter.

Thank you,

    Keiko

GOVERNMENT EXHIBIT
**65**
2:15-CR-00198-GMN

DOJ_PROD_SEC00008583

MEMO TO: Keiko
FROM: Edwin Fujinaga, CEO
EFERENCE: Official inquiry to Ministry
Dated: March 16, 2009

Dear Keiko:

In response to the attached request by the ministry, I discussed this matter with Richard to determine what kind of document is needed to confirm that MRI only uses the funds to purchase MARS.

In the meantime, I researched our files and found an up-dated Sterling Escrow letter that is dated September 15, 2008.

I assumed that this letter from escrow, dated September 15, 2008, was sent to ministry as part of our original registration.

> **In response to the attached request by the ministry, I discussed this matter with Richard to determine what kind of document is needed to confirm that MRI only uses the funds to purchase MARS.**

t is disclosed in all of our printed material that was submitted and approved by the ministry, I agree .th Richard's recommendation.

Since Sterling Escrow is our official depository of funds from Japan, any letter to MRI from escrow becomes an official document that is subject to audit by the State of Nevada. I do not want to keep asking escrow to submit confirmation letters because of this reason.

Richard, will be calling you to discuss this matter with the ministry and advise me accordingly.

Thank you for your diligence on this matter.

Sincerely,

Edwin Y. Fujinaga, CEO

GOVERNMENT
EXHIBIT
66
2:15-CR-00198-GMN

GOVERNMENT
EXHIBIT
66
2:15-CR-00198-GMN

DOJ_PROD_SEC00007169

Case 2:15-cr-00198-JJK Document 336-1 Filed 08/18/20 Page 28 of 123









## Detail B - Current Period Trip Charges

### Trip #2007120896

| Date | Depart/Arrive | Lead Passenger | Item | Request | Flown | Notes* | Billed Hours | Rate | Sub Total | Flight Total |
|------|---------------|----------------|------|---------|-------|--------|-------------|------|-----------|--------------|
| 12/22/07 | KLAS Las Vegas, NV to PHKO Hawaii Island, HI | Edwin Y. Fujinaga | Flight | 300 | 300 (N515FX) | 135 | 5.7 | $ 4,632.00 | $ 26,402.40 | |
| | | | FET Tax International | | | | | | $ 30.00 | |
| | | | FET Tax 7.5% + Segment Fee | | | | | | $ 313.59 | |
| | | | International Fees | | | | | | $ 800.00 | $ 27,545.99 |
| 12/28/07 | PHKO Hawaii Island, HI to KLAS Las Vegas, NV | Edwin Y. Fujinaga | Flight | 300 | 604 (N327FX) | 135 | 5.8 | $ 5,147.00 | $ 29,852.60 | |
| | | | FET Tax 7.5% + Segment Fee | | | | | | $ 359.59 | |
| | | | FET Tax International | | | | | | $ 45.00 | |
| | | | International Fees | | | | | | $ 800.00 | $ 31,057.19 |
| | | | Trip #2007120896 Total | | | | 11.5 | | | $ 58,603.18 |

GOVERNMENT
EXHIBIT
209
2:15-CR-00198-GMN





GOVERNMENT
EXHIBIT
84
2:15-CR-00198-GMN

GOVERNMENT
EXHIBIT
83
2:15-CR-00198-GMN

# Fax

**Comments:** Dear Junzo:

I am faxing the new information required for the 2006 new brochures.

Thank you.

**To:** Junzo Suzuki     **From:** Edwin Fujinaga



# FAX

Dear Mr. Fujinaga

We are now working on the new application form for 2007 and we will bring the drafts for your reviewing on next week, we would like to have your authorization while we are in Las Vegas.

TO : EDWIN FUJINAGA     FROM : JUZNO SUZUKI

GOVERNMENT
EXHIBIT
8
2:15-CR-00198-GMN



The biggest concern by all investors is the safety of your investment. MRI has structured a unique investment product to protect our investors' funds.

Escrow: is one of our key elements that protect our investors' funds from inappropriate use. What is Escrow? Escrow is a service first established in California for the

17. No change.



A) Main point is that escrow is a respectable third party institution and escrow is responsible that the funds collected from our investors are safely used accordingly to the contract. If MRI is insolvent escrow will be responsible to find another collection agency to collect the MARS in the lock box account and distribute to the investors. If escrow is insolvent the state government will be responsible for all dealing that escrow was handling.

18. No change.

GOVERNMENT
EXHIBIT
27
2:15-CR-00198-GMN



The escrow system, the characteristics of a lockbox account, the guarantee act established by each state has been existed in America for quite some time. We have successfully combined these systems to create a secure and safe investment environment.

22.    No change.

GOVERNMENT
EXHIBIT
**27**
2:15-CR-00198-GMN



The lockbox account is a special account designed to process large volumes of monies from the billing and collecting receivables, therefore all funds in the lockbox account will not earn any interest. In the lockbox account any funds used to purchase an asset must meet a 1:1 ratio. Also any funds or assets in the lockbox account are controlled by the state and federal government. This means that if the financial institution is unable to operate, the financial institution can not touch the funds or assets in the lockbox account.

19. Change: Also, any funds in a loxbox account are subject to U.S. banking regulations. MRI's primary bank, Wells Fargo, is a very large regional bank within the U.S. and is ranked as one of the top 10 banks in our country.



A) Main point is that any funds in lock box account are secured and controlled by state law if escrow is insolvent. Also the investors has the first right to the accounts funds and MARS if escrow or MRI is insolvent. Also if escrow is insolvent the funds in the lock box will not follow the pay off procedure.

20. Change the last sentence. Also, if escrow is insolvent, the funds in the lockbox account will still follow the same pay off procedures as funds or assets held in escrow.

GOVERNMENT
EXHIBIT
27
2:15-CR-00198-GMN



| | | | |
|---|---|---|---|
| TO: | EDWIN FUJINAGA | FROM: | Richard Shintaku |
| FAX | 702-363-1957 | PAGES: | including the cover page |
| PHONE: | | DATE: | 9/9/2008 |
| RE: | Documents need the approvals | CC: | |

Mr. Fujinaga

We are planning to start the sale for Select A 2008 from 9/24. In order to meet the deadline for printing, we need your approvals for those documents now.

When we had the meeting in Las Vegas, we were discussing a couple of documents which need your approvals before they go printings.

I have attached "Documents Delivered Prior to Agreement" and "Agreement" for your reminder.

Please read those documents and then fax back your approvals so that we can forward it to printing in Japanese format.

GOVERNMENT EXHIBIT
42
2:15-CR-00198-GMN

# DOCUMENT DELIVERED PRIOR TO AGREEMENT

(This document is to be handed to our clients in compliance with the Financial Instruments and Exchange Law, Article 37-3.)

Please read the entire document

This document preliminarily states the potential risks and key points to remember for investors when signing an agreement (hereinafter, "this agreement") between our company (i.e., MRI International, Inc., hereinafter, "our Company"). Read the document thoroughly and clarify any unclear points before commencing the transaction.

| | |
|---|---|
| Trade Name | MRI  International,Inc. |
| Address | 5330  South Durango Drive, Las Vegas, Nevada, USA 89113 |
| | Phone   (702) 396-8822 |
| Financial Products Trader | Our Company is a financial commodities trader transacting business in second-class financial merchandise, listed under the registry number as follows: |
| | Registry Number: No. 1881 authorized by the Director of the Finance Bureau, Kanto Region (Financial Instruments) |

GOVERNMENT EXHIBIT
42
2:15-CR-00198-GMN

---

## Pre-Contract Documents

(These documents are delivered to you, pursuant to Article 37-3 of the Financial Instruments and Exchange Act.)

Please read the documents carefully

These documents explain your risks and points of attention in concluding the Financial Instruments Transaction Agreement (hereinafter referred to as "this Agreement") between you and MRI INTERNATIONAL, INC. (hereinafter referred to as "our Company," "we," "our" or "us"). Please read these documents carefully in advance, and confirm any unclear points before entering into this Agreement.

| | |
|---|---|
| Company Name | MRI INTERNATIONAL |
| Address | 5330 SOUTH DURANGO DRIVE<br>LAS VEGAS, NV 89113<br>USA<br>Phone: 702-396-8822 |
| Financial instruments firm | We are a financial instruments firm that conducts a Type II Financial Instruments Business, and the registration number is:<br><br>Kantou Zaimu Kyokuchou (Kinshou) No.1881 |

GOVERNMENT EXHIBIT
115
2:15-CR-00198-GMN

## Financial Products Trading Contract

Since Party A has applied for the offering made by Party B in respect to the equity in the group investment scheme, Party A and Party B shall conclude the financial products trading contract (hereinafter, "Contract") as follows.

Article 1 (Purpose)
1. Party A shall invest money ("Invested Amount") with Party B as capital to purchase Medical Accounts Receivables ("MARS"), which Party B will buy from medical institutions.
2. Party B uses the contributed money to buy MARS and execute collections ("Business Covered by the Investment"), distributing part of the profit generated from the Business Covered by the Investment to Party A and returns the Invested Amount upon the expiration of the Contract term.

GOVERNMENT
EXHIBIT
42
2:15-CR-00198-GMN

## Financial Products Trading Contract

The said customer ("Party A") has applied for the offering made by MRI INTERNATIONAL, INC. ("Party B") in respect to the equity in the group investment scheme, Party A and Party B shall conclude the financial products trading contract ("Contract") as follows.
To conclude this agreement, the Party A will receive Documents Delivered Prior to Contract issued by the Party B and sign the contract with the comprehension of the content.

Article 1 (Purpose)
1. Party A shall invest money ("Invested Amount") with Party B as capital to purchase Medical Accounts Receivables ("MARS"), which Party B will buy from medical industry.
2. Party B uses the contributed money to buy MARS and execute collections ("Business Covered by the Investment"), distributing part of the profit generated from the Business Covered by the Investment to Party A and returns the Invested Amount upon the expiration of the Contract term.

GOVERNMENT
EXHIBIT
178
2:15-CR-00198-GMN

Dear Mr. Fujinaga,

The customer service center has continuously issued a newsletter to our investors for the past 7 years. Late last year, we have changed the name of the newsletter to "VIMO". Since, the customer service center has printed an English version of "VIMO". Currently, we have sent issues 1 through 4 to the head office. In this new version of the "VIMO", there is a page titled "MRI Tutorial". This section is mainly published to inform and educate our investors regarding MRI's business, MRI's financial product, and any information regarding to the receivable/financial environment.

All, published work has been approved by either Junzo or Keiko. But Junzo was not sure if this month's "MRI Tutorial" was appropriate or not. The theme is "funds".

Junzo suggested for prior approval.

This report is APPROVED.

Thank you.

Edwin Y. Fujinaga, CEO

GOVERNMENT
EXHIBIT
63
2:15-CR-00198-GMN

GOVERNMENT
EXHIBIT
64
2:15-CR-00198-GMN

Case 2:15-cr-00198-GMN-NJK Document 396-1 Filed 08/18/20 Page 42 of 123

GX 450





GX 453

**Investor Deposits and Returns to Investors January 2009 – May 2013**

Legend:
- Investor Deposits
- Returns to Investors
- From MRI Holding Accounts

MEMO TO:      Junzo
FROM:          **Edwin Fujinaga, CEO**
REFERENCE:   Information to ministry
Dated:          April 22, 2009

Dear Junzo:

This memo is a summary of the various documents being submitted to Japan:

Thre most important information is the Process Flow of purchasing medical claims.

I am using the months of Jan – Jun-2008 wires received by Japan investors as an example.

The total amount of investor funds in this example is $17,893,321.

**Process Flow:**

Wires from japan investor are first received in the MRI Holding Account at Wells Fargo Bank.
This account is administered by Sterling Escrow.

GOVERNMENT
EXHIBIT
**68**
2:15-CR-00198-GMN



100-0014
東京都千代田区永田町2-14-3
赤坂東急ビル6D
PHONE:03-5510-4081
FAX:03-3509-1561

# FAX

送付先　Mr. Fujinaga

FAX番号: 702-363-1957

電話番号:

件名:　MRI Seminar

Dear Mr. Fujinaga,

I have attached the final script for our seminar beginning from April 8th. Please revise the script and if there is no correction, please sign the approval section on the last page. I have looked over the script, and I am concerned about 1 information, this past 8 years we have told the investors that the collected funds are used directly to purchase MARS. If we were to disclose any specific information about Four Seasons Medical Group, I must need all information and a legal back up to educate my staff in Japan to be prepared for any questions. Our biggest sales point in Japan is the safety of the funds collected. The second biggest sales point is that we use the funds to purchase only MARS (with the right technology and the right personnel, a very reliable receivable to invest in). I hate to rush with such important matter but it will be very grateful if you can fax me your revised version with your approval as soon as possible to Keiko's private fax in Japan.

Thank you very much for your time,

Paul Suzuki

GOVERNMENT
EXHIBIT
25
2:15-CR-00198-GMN



**Fax**

| | | | |
|---|---|---|---|
| **To:** | Paul Suzuki | **From:** | Edwin Fujinaga, CEO |
| **Fax:** | | **Pages:** | |
| **Phone:** | | **Date:** | 03/27/07 |
| **Re:** | Miscellaneous | **CC:** | Richard Shintaku |



Richard has also called to clarify how MRI is affiliated with the Four Seasons Medical Group. The answer is simple, MRI has nothing to do with the Four Seasons Medical Group.

Please do not use the Four Seasons Medical Group identity in any of our disclosure materials in Japan because it is a violation of both State and Federal health care laws for a non physician to own shares in a Medical Group Practice.

This contract with MRI Medical Management Group is a win win situation for MRI to grow its core business of purchasing claims.

I apologize for any misunderstanding and I look forward to seeing you in April.

Thank you.

GOVERNMENT
EXHIBIT
26
2:15-CR-00198-GMN

MEMORANDUM

**FROM:** CEO
**REF:** Status Report
**DATE:** April 10, 2012

Dear Junzo & Paul:

Thank you for keeping me appraised of the situation with our investors.

In this particular case, it is difficult to predict when the State will conduct an in depth examination of all escrow companies.

This examination is routine and MRI is not being targeted by the State.

The last in-depth State examination occurred approximately five years ago for a different

In the case of ministry auditors, the following situation has occurred over the past three



Fifth, the fund raising must continue to cover all liquidations to allow MRI to focus on payments for all interest payments regardless of the due date.

Liquidations will be paid from new funds raised in Select A.

Second, do not change any disclosure documents or do any announcements in the news letter.

Third, any explanation will be confined to only individual investors that have called our office.

Fourth, I will provide a generic explanation for this delay but only after the investor is paid and a written apology is sent to the investor on an individual basis.

Fifth, the fund raising must continue to cover all liquidations to allow MRI to focus on payments for all interest payments regardless of the due date.

Liquidations will be paid from new funds raised in Select A.

We are still wasting money due to currency exchange issues and these funds could have been invested in Pharmacy claims at an average rate of return of 250 %.

We have lost so many opportunities to purchase claims from many Pharmacies.

The most important thing at this time is keep all interest payments current and reduce the amount of calls to our office.

I will handle this matter with Escrow.

**GOVERNMENT EXHIBIT**
**131**
2:15-CR-00198-GMN

MEMO TO:   Junzo and Paul Suzuki
FROM:        CEO
REF:          Status Report
DATE:        April 24, 2012

CONFIDENTIAL

3. **CORRECTIVE ACTION.**

AS I HAVE STATED BEFORE, TIMING IS OUR KEY STRATEGY.

It is important that you understand that MRI is financially very strong and in total compliance with the Period-end equity to period-end asset.

First, I have personally advance to MRI the amount of $6,000,000. to date, to continue to pay interest on liquidations

Third, I am projecting that Japan should be able to raise at least $1,000,000 per day to pay future liquidations on schedule.

Fourth, I will need Junzo to advance $1,000,000 to help MRI pay any outstanding liquidations that are still pending. Juno's advance will probably be paid off within 90-days or less.

I am confident that the Escrow audit maybe completed by the end of next week or so.

Junzo, this the proposed Corrective Plan of Action at this time but my goal is to end this audit as soon as possible.

Thank you and take care.

Sincerely,

Edwin Y. Fujinaga
CEO

GOVERNMENT
EXHIBIT
136
2:15-CR-00198-GMN

MEMO TO: Paul Suzuki
FROM: CEO
REF: Wires to Japan
DATE: May 31, 2012

Dear Paul:

This is to in form you that I have signed an agreement with Escrow and the State examiners that confirms, in writing, that the audit is completed and as agreed with all parties.

The only remaining issue for MRI is the following:

We will need to replenish the funds in escrow through our fund raising in Japan to keep the liquidations and interest current, as we ramp up our revenue base within our pharmacy division.

In the mean time, I have sold or negotiated a bulk reimbursement for some of our backlog medical treatment claims to increase our liquidity position as soon as possible.

I am projecting that our raising in Japan is the fastest way to reserve sufficient liquidity to pay for liquidations and interest on a timely basis.

... negotiating with some of our clinical clients to terminate MRI's agreement with a 90-day notice that will close out at $6,000,000.

I am projecting that our raising in Japan is the fastest way to reserve sufficient liquidity to pay for liquidations and interest on a timely basis.

Thank you for your support patience in this matter.

Sincerely,

Edwin Fujinaga, CEO

GOVERNMENT
EXHIBIT
146
2:15-CR-00198-GMN

CONFIDENTIAL



MEMO TO: Paul
FROM: CEO
REF: Interest payments
DATE: August 1, 2012

Dear Paul:

However, I will need your help in raising funds to pay for all liquidations as soon as possible.

This is my current status:

I have used funds received from smaller MARS clients that were liquidated.

I would like to concentrate on paying all of the delayed interest payments and Japan expenses.

I need your help to focus on raising funds to pay for all delayed liquidation payments.

With your help on liquidations, we should be able to bring everything current by the end of August.

This plan will enable us to start the official PR and marketing programs on Sept. 9 with a clean slate.

Thank you and I look forward to seeing you at the next tour.

Sincerely,

Edwin Fujinaga
CEO

GOVERNMENT
EXHIBIT
162
2:15-CR-00198-GMN

CONFIDENTIAL

**MEMO TO:** Junzo and Paul
**FROM:** CEO
**REF:** Interest and liquidations
**DATE:** August 2, 2012

(57)

Dear Junzo:

All of the attached critical investors were paid in full.

I am attaching a list of all liquidations still pending for the following objectives:

Refer to my memo to Shui Ling



Of course, as we receive new money from Select A, Japan Stimulus, or MRI's clients, this should contribute to resolving the delayed payments much faster and reduce the risk of complaints as the fund stabilizes with no delayed payments and start rebuilding our reserves of cash for at least $10,000,000.

Regarding interest:

This plan will also allow a greater opportunity to pay both interest and maximize liquidations, all at the same time.

Of course, as we receive new money from Select A, Japan Stimulus, or MRI's clients, this should contribute to resolving the delayed payments much faster and reduce the risk of complaints as the fund stabilizes with no delayed payments and start rebuilding our reserves of cash for at least $10,000,000.

The Tele-conferencing went very well and it was great to see all of you in Japan.

Thank you for patience in this matter and I look forward to seeing all of you at the next investor tour.

Sincerely,

Edwin Fujinaga
CEO

**GOVERNMENT EXHIBIT**
**163**
2:15-CR-00198-GMN



# Wildfire Detailing

Wildfire Detailing
5537 Cypress Creek St.
N. Las Vegas, NV 89031

(702)379-4492
wildfiredetailing@hotmail.com

| Date | Invoice # |
|------|-----------|
| 03/07/2013 | 1481 |
| **Terms** | **Due Date** |
| Due on receipt | 03/07/2013 |

**Bill To:**
Factoring Co. X
1800 E. Desert Inn Rd.
Las Vegas, NV 89109

| Date | |
|------|--|
| 02/18/2013 | RESET WASH |
| 02/18/2013 | QUAD/POLA... |
| 02/18/2013 | BUGATTI; TI... |
| 02/19/2013 | MCCLAREN; DETAIL. |
| 02/20/2013 | ESCALADE; WASH |
| 02/20/2013 | BENTLEY; WASH |
| 02/20/2013 | STRADALE; POLISH CARBON FIBER. |
| 02/20/2013 | GO THROUGH TAX BOXES FOR MR. FUJINAGA. 2 HRS |
| 02/21/2013 | GT; DETAIL |
| 02/22/2013 | C4500 WHITE; TIRES, FLUIDS, FUEL, WASH |
| 02/22/2013 | C4500 RED; TIRES, FLUIDS, FUEL, RUN |
| 02/22/2013 | HORSE TRAILER GNERATOR. |
| 02/22/2013 | BUS; CHARGE BATTERIES AND RUN GENERATOR. |

02/18/2013 | BUGATTI; TIRES, FLUIDS, FUEL, RUN, WIPE DOWN.
02/19/2013 | MCCLAREN; DETAIL
02/20/2013 | ESCALADE; WASH
02/20/2013 | BENTLEY; WASH

300.00
45.00
45.00
...

66

**FACTORING COMPANY X III, INC.**
OPERATING ACCOUNT
1800 E. DESERT INN RD.
LAS VEGAS, NV 89169

WELLS FARGO BANK
530 S. LAS VEGAS BLVD., STE. 210
LAS VEGAS, NV 89101
94-7074/3212

006648

PAY TO THE
ORDER OF     Wildfire Detailing                3/15/2013        $ ***********3,650.00*

*THREE THOUSAND SIX HUNDRED FIFTY AND XX / 100                              DOLLARS

Wildfire Detailing
5537 Cypress Creek St.
North Las Vegas, NV 89031

Peter C. Maing

MEMO

GOVERNMENT
EXHIBIT
**403**
2:15-CR-00198-GMN





GOVERNMENT
EXHIBIT
136
2:15-CR-00198-GMN

MEMO TO: Junzo and Paul Suzuki
FROM: CEO
REF: Status Report
DATE: April 24, 2012

CONFIDENTIAL

MEMO TO: Junzo and Paul Suzuki
FROM: CEO
REF: Status Report
DATE: April 24, 2012

3. **CORRECTIVE ACTION.**

AS I HAVE STATED BEFORE, TIMING IS OUR KEY STRATEGY.

It is important that you understand that MRI is financially very strong and in total compliance with the Period-end equity to period-end ass

First, I have person
that are outstanding.

Third, I am projecting that Japan should be able to raise at least $1,000,000 per day to pay future liquidations on schedule.

Second, I will personally advance the amount of $4,000,000 to MRI to help MRI pay any interest or liquidations that are still pending.

Third, I am projecting that Japan should be able to raise at least $1,000,000 per day to pay future liquidations on schedule.

Fourth, I will need Jun
Juno's advance will probabl

I am confident that the

Junzo, this the proposed Co

Thank you and take care.

Sincerely,

Edwin Y. Fujinaga
CEO





Use of Two Wire Transfers by Investor of $200,000 (Counts 11 & 12)

GX 484

**7/5/12 Disbursements**

| CSA Service Center | $120,000 |
|---|---|
| Claims Servicing of America | $80,000 |
| Med-Health Pharma | 40,000 |
| CSA Surgical Center of America | $20,000 |

$118,627

| Olympus Construction | $50,000 |
|---|---|
| Chubb Group of Insurance Co. | $19,820 |
| Isabel Castillo Gardening Services | $18,717 |
| Hacienda La Cumbre | $8,510 |
| Kapoa'ula Ranch | $5,705 |
| Las Vegas Valley Water District | $3,406 |
| Coleman Airpark Phase 1 | $2,217 |
| Tournament Players Club | $1,075 |
| Tournament Hill Comm. Assn | $985 |
| Other | $8,189 |

FROM:       CEO
REF:        Status Report
DATE:       April 10, 2012

Dear Junzo & Paul:

Thank you for keeping me appraised of the situation with our investors.

In this particular case, it is difficult to predict when the State will conduct an in depth examination of all escrow companies.

This examination is routine and MRI is not being targeted by the State.

The last in-depth State examination occurred approximately five years ago for a differen

---

Dear Junzo & Paul:

Thank you for keeping me appraised of the situation with our investors.

In this particular case, it is difficult to predict when the State will conduct an in depth examination of all escrow companies.

This examination is routine and MRI is not being targeted by the State.

---

Fifth, the fund raising must continue to cover all liquidations to allow MRI to focus on payments for all interest payments regardless of the due date.

Liquidations will be paid from new funds raised in Select A.

We are still wasting money due to currency exchange issues and these funds could have been invested in Pharmacy claims at an average rate of return of 250 %.

We have lost so many opportunities to purchase claims from many Pharmacies.

The most important thing at this time is keep all interest payments current and reduce the amount of calls to our office.

I will handle this matter with Escrow.

GOVERNMENT
EXHIBIT
131
2:15-CR-00198-GMN

MEMO TO: Junzo Suzuki
FROM: CEO
REF: Status Report
DATE: April 24, 2012

CONFIDENTIAL

Dear Junzo:

Thank you for keeping me appraised of the situation with our investors.

Just a note to let you know that I appreciate all of the support from all of you in the Japan office.

The following is MRI's Plans to return to a routine payment schedule for interest and liquidations.

**I.   CURRENT STATUS WITH ESCROW AUDIT**

First, let me reconfirm to that this still a routine audit but expanded because of vari[ous] matters that the State may consider to be very important,

As stated, this is both a financial audit as well as a document compliance audit on MRI's business of purchasing MARS within the U.S.

The following is a list of items that the State is examining:

- Compliance with all of the terms and conditions of the Escrow agreement.

- A review of MRI's annual financial statements for 2011.

- Analyzing a random sampling of a minimum of 500,000 patient claims that MRI [over the last] five years (2007, 2008, 2009, 2010, and 2011) to confirm the 1 - 1 Ratios.

- A financial review of MRI's Currency Exchange losses for 2009, 2010, and 2011 of $81,721,202.

- A review of MRI's current and future policies and strategies to reduce MRI's exposure to Currency Exchange that are still averaging $80 to $81.

- The total amount of interest, liquidations, and Exchange Losses paid for the last three years. See Exhibit A.

- **Selected Ratios**

- Fund Balance as of 2011:              $1,266,706,317

- Total MARS Balance as of 2011:     $1,376,860,924

- Period-end equity to period-end asset:   108.70%

GOVERNMENT
EXHIBIT
**136**
2:15-CR-00198-GMN

MEMO

FROM: CEO
REF: Wires to Japan
DATE: May 31, 2012

Dear Paul:

This is to in form you that I have signed an agreement with Escrow and the State examiners that confirms, in writing, that the audit is completed and as agreed with all parties.

This is to in form you that I have signed an agreement with Escrow and the State examiners that confirms, in writing, that the audit is completed and as agreed with all parties.

The only remaining issue for MRI is the following:

Escrow had a balance of approximately $31,000,000 that was being held as a reserve for currency exchange.

The $30,000,000 will be taken from this fund leaving a balance of $1,000,000 as of the date of the agreement with escrow and the State.

I am also negotiating with some of our clinical clients to terminate MIR's agreement with a 90-day notice that will close out at $6,000,000.

I am projecting that our raising in Japan is the fastest way to reserve sufficient liquidity to pay for liquidations and interest on a timely basis.

Thank you for your support patience in this matter.

Sincerely,

Edwin Fujinaga, CEO

GOVERNMENT
EXHIBIT
146
2:15-CR-00198-GMN

Response from MRI
3/14/13

Pursuant to the Orders Dated March 6, 2013, and March 8, 2013, issued by the Securities

In response to Inquiry # 2, there was no formal state post audit of the various MRI Series Trust Accounts. Rather, this internal assessment, performed at the request of MRI and in

In response to Inquiry # 1, the cause of the delay stems from the gaps of time between the maturity of investment and the actual collection of the MARS receivables. Because of the extremely strong yen of the recent years, MRI miscalculated the amount of cash required to pay back the investors in a timely manner. Thus, the volatile market conditions, including the unforeseen strength of the yen, as well as the gap of time related to the actual collection of MARS receivables; both were the main factors that resulted in the "Delay."

As set forth above, there was no formal State audit.

an
the

MRI has and will continue to develop strategies to avoid this issue in the future.

**Response To Inquiry # 2:**

In response to Inquiry # 2, there was no formal state post audit of the various MRI Series Trust Accounts. Rather, this internal assessment, performed at the request of MRI and in conjunction with Sterling Escrow in Clark County, Nevada, was performed for the purpose of

As mentioned above, there were no State auditors involved.

was a precautionary measure taken by MRI.

As a result of this assessment, the United States headquarters of MRI determined that to preserve the continued integrity of the funds and to protect investors against volatile market exchange rates, a reserve fund of thirty (30) million dollars would be established in order to ensure continued liquidity and payments to investors pending collection and disbursement of the MARS proceeds in a timely fashion. MRI's decision to establish this reserve, as well as this internal audit, has contributed to the "Delay." MRI is executing its post-assessment plan to finalize the transactions sufficient to meet the post-assessment reserve it has determined will maintain the integrity of the funds and protects its investors.

GOVERNMENT
EXHIBIT
199
2:15-CR-00198-GMN

Pursuant to the Orders Dated March 14, 2013, and March 18, 2013, issued by the Securities and Exchange Surveillance Commission ("SESC"), as well as the supplemental Exhibit attached thereto, MRI International, Inc., by and through its Representative Director, Edwin Y. Fujinaga, responds to the Commission's inquiry and continues to supplement its prior responses as follows:

### Responses To Inquiries From Order Dated March 14, 2013 (Deadline March 22)

#### Supplemental Response To Inquiry (2)[1]:

As a supplemental response to this inquiry, MRI has produced banking records from 2009-2013 for its Class and Select Trust Accounts, and has produced banking records for the lockbox accounts described in previous responses and as requested by the Ministry. Additional records have been requested by MRI, and the same will be supplemented when received.

In response to Inquiry (2)[1], there was no formal state post audit, as previously responded to by MRI. With respect to the rationale provided to the Investors, the response could have been worded differently and was a regrettable mistake and a poor choice of words in English as conveyed to the Tokyo Office by the United States headquarters. When the Delay

#### Response To Inquiry (2)[4]

As a supplemental response to this inquiry, MRI has produced records from 2009-2013 for its Class and Select Trust Accounts, and has produced records relative to the lockbox accounts as well as other accounts. MRI continues to compile information as requested by the Ministry and the SESC and will produce this information as it is continued to be received.

#### Response To Inquiry (2)[5]

MRI is still preparing this statement, and will produce it as soon as it is complete.

#### Response To Inquiry (3)[1]

As a supplemental response to this inquiry, MRI has produced correspondence detailing the creation of the Trust Accounts as well as additional correspondence outlining creation of specific lockbox accounts.

#### Response To Inquiry (3)[3]

GOVERNMENT
EXHIBIT
289
2:15-CR-00198-GMN

MRI INTERNATIONAL, INC.

| BILLING PERIOD | COLLECTIONS | TOTAL COLLECTIONS |
|---|---|---|
| ANAHEIM NSC II 2004 | 4,846,908 | |
| ANAHEIM NSC II 2005 - SEPT 2010 | 5,450,014 | |
| ANAHEIM NSC II OCT - DEC 2010 | 15,914 | 10,312,836 |
| ANAHEIM CENTER BACKLOG (WORKER'S COMP) | | 36,300,457 |
| | | |
| ONTARIO NSC III 2004 | 944,752 | |
| ONTARIO NSC III 2005 - SEPT 2010 | 16,518,235 | |
| ONTARIO NSC III OCT - DEC 2010 | 720,423 | 18,183,410 |
| | | 98,214,537 |

LESS: REVENUE RECOGNIZED

| | | |
|---|---|---|
| 2004 | (98,833) | 753,502 |
| 2005 | (113) | 933,835 | 7,687,337 |
| 2006 | (5) | 11,956,811 |
| 2007 | 0 | 3,837,683 |
| | | 4,590,430 |
| 2008 | (20,000) | 2,535,138 |
| 2009 | (16,145,815) | 193,618,639 |
| | | (105,196,107) |

TOTAL INCOME 2010          72,157,766

| 2004 | (98,833) |
|---|---|
| 2005 | (113) |
| 2006 | (5) |
| 2007 | 0 |
| 2008 | (20,000) |
| 2009 | (16,145,815) |

TOTAL INCOME 2010          72,157,766

GOVERNMENT
EXHIBIT
234
2:15-CR-00198-GMN

MRI INTERNATIONAL, INC.
Dated: January - December 2010

| ITEM | AMOUNTS | CUMULATIVE |
|---|---|---|
| **Operating Revenue:** | | |
| Med-Health Pharmaceutical Products (10% Discount) | 11,956,811 | |
| One Stop (10% Discount) | 3,837,683 | |
| HOYS Drugs (10% Discount) | 4,590,430 | |
| HOYS Hospital Pharmacy (10% Discount) | 2,535,138 | |
| Ontario Surgery Center (On-Going @ 10%) | 19,233,948 | |
| Ontario Backlog (Worker's Comp.@ 50%)) | 93,214,537 | |
| Anaheim Center Backlog (Worker's Comp.@ 50%)) | 36,300,457 | |
| Less Bad Debt @ 16% | -31,317,725 | |
| Other operating revenue - Accrued Interest @ 5 years | 78,893,921 | |
| **Total Operating Revenue** | $ 224,245,200 | $ 224,245,200 |
| | | |
| **Operating Expenses** | | |
| MARS Purchase Price | | |
| Salary & Wages | | |
| Payroll Tax | | |
| Fed-unemployment Tax | | |
| ADP Fees | | |
| Advertising | | |
| Accounting Fees | | |
| Consulting Fees & Commissions | | |
| Collection Fees @ 6% | | |
| Escrow Fees | | |
| Dues & Subscriptions | | |
| Investors Benefit | | |
| Employee Benefits | | |
| Meals and Entrtain. | | |
| Marketing Fees | 98,980 | |
| Interest Expense | 67,944,264 | |
| Service Center in Japan | 5,834,166 | |
| Office Supplies | 47,242 | |
| Postage | 97,419 | |
| Legal Fees | 102,332 | |
| Repairs & Building Maint. | 26,818 | |
| Security | 87,043 | |
| Utilities | 32,079 | |
| Travel & Conferences | 198,218 | |
| Transportation | 409,831 | |
| Transportation Factoring | 30,000 | |
| Maint. & Janitorial | 11,434 | |
| **Total Expenses** | $ 192,039,101 | $ 192,039,101 |
| **NET INCOME FROM OPERATIONS** | $ 32,206,099 | $ 32,206,099 |
| **EARNINGS BEFORE TAX** | $ 32,206,099 | $ 32,206,099 |
| **NET INCOME (LOSS)** | $ 32,206,099 | $ 32,206,099 |

Handwritten notes: "Looks like..." "Looks like..." "who knows?" "17m"

## Total Operating Revenue — $ 224,245,200

## Operating Expenses

### MARS Purchase Price — 105,196,107

GOVERNMENT
EXHIBIT
234
2:15-CR-00198-GMN

**MEMO TO:** Peter
**FROM:** Ed Fujinaga
**REFERENCE:** Miscellaneous
**DATE:** September 3, 2009

Dear Peter:

This memo is further clarification of Raven's job responsibly as stated in the attached memos.

Raven or no one will have access to MRI General Account, MRI Holding account, or any accounts that are labeled "Restricted and High Confidentiality".

Furthermore, the financial system in Japan is culturally very different for the U.S. and many new laws have been created to protect the confidentiality of all investor financial information.

Only Sterling Escrow and I are designated as the authorized representative in the U.S. for all of our financial affairs between Japan and the U.S.

The less people involved with Japan is, in my opinion, the best option to prevent any miscommunication with our people in Japan.

Thank you.

GOVERNMENT
EXHIBIT
73
2:15-CR-00198-GMN

MEMO TO: Raven
FROM: Edwin Fujinaga
RE: Revenue Reports
DATE: April 4, 2011
cc: Peter

Dear Raven:

This is regarding the tax returns for Claims Servicing, MRI, and CSA Service Center.

Please do not file a return pending my analysis of revenue for these entities.

Tank you.

MEMO TO: Paul Suzuki
FROM: CEO
REF: Miscellaneous
DATE: June 17, 2012

Dear Paul:

Approximately 30-dys has transpired as off the date of the settlement and this agreement.

As discussed, the settlement required MRI to transfer $30,000,000 to

The ramp up projected time period was estimated at 60-days from the

This reserve is critical to pay interest and liquidations on a timely basis

The following is a list of strategies and projected cash enhancement an

I.     Other Solutions.

1.     Fund raising in Japan.

2.     Sell a limited amount of medical treatment backlog claims so long as the loan to value ratio is maintained.

3.     Provide additional financial support from major stockholder (CEO) on a temporary basis.

4.     Provide additional reserves for Public Relations, internet, marketing and sales.

5.     Reduce the payment of daily interest by 15% initially and gradually increase the amount of interest pay to compounding interest.

II.     Projected Financial Enhancement Programs.

7.     Sell a limited amount of medical backlog claims:

Surgery Center #1:        $5,500,000 non recourse

Surgery Century #2:       $2,500,000 non recourse

8.     Additional loans to MRI:      $2,000,000 by (CEO) Projected to be available at

9.     Convert interest pay to compounding, initially at 15% of annual interest payments fo

Reduction of cash payments for interest: (annually): $10,800,000

III.     Revenue Enhancement Programs.

10.    Negotiating with 25 pharmacies in Colorado.

11.    Estimated annual sales of:          $75,000,000

Thank you very much.

Sincerely,

Edwin Fujinaga, CEO





GOVERNMENT EXHIBIT
151
2:15-CR-00198-GMN

Case 2:15-cr-00199-GMN-NJK Document 961 Filed 08/18/20 Page 75 of 126





September 06, 2012

Dear Mr. Fujinaga,

I am sorry I have no records for the year of 1999 – 2006.

| YEAR | TOTAL INTEREST PAID | OUTSTANDING BALANCE |
|------|---------------------|---------------------|
| 2001 | 3,199,348 | N/A |
| 2002 | 6,609,268 | N/A |
| 2009 | 58,265,812 | 1,043,659,983 |
| 2010 | 66,987,394 | 1,194,268,974 |
| 2011 | 72,892,964 | 1,415,362,111 |
| as of Aug 2012 | 48,056,433 | 1,536,333,738 |

Thank you,

Shiu Ling

GOVERNMENT
EXHIBIT
**249**
2:15-CR-00198-GMN

| FACILITY | 2009 COLLECTIONS | 2010 COLLECTIONS | 2011 COLLECTIONS |
|---|---|---|---|
| MRI Purchased claims... | 0.00 | 24,525.00 | 30,946.81 |
| Encino/Anaheim/Camarillo | | | |
| Friedman Professional Mgmt | | | |
| Good Shepherd I & II | 682.32 | 0.00 | 0.00 |
| | | | |
| Med-Health Pharmaceutical Products | 3,603,357.79 | 5,668,509.83 | 6,763,683.74 |
| Encino/Anaheim/Ontario/Camarillo | 6,486,956.31 | 5,127,606.44 | 4,804,546.72 |
| One-Stop Pharmacy | 0.00 | 3,063,234.17 | 3,811,309.93 |
| Hoy's Inc. | 0.00 | 3,092,591.25 | 8,100,572.07 |
| GRAND TOTAL | 10,566,280.02 | 17,849,889.36 | 24,371,011.32 |
| 6% of Collections | 633,976.80 | 1,070,993.36 | 1,462,260.68 |
| Grand Total of 6% Collections | | | 3,167,230.84 |

**Overlay highlighted rows:**

| | 2009 COLLECTIONS | 2010 COLLECTIONS | 2011 COLLECTIONS |
|---|---|---|---|
| GRAND TOTAL | 10,566,280.02 | 17,849,889.36 | 24,371,011.32 |

GOVERNMENT
EXHIBIT
247
2:15-CR-00198-GMN

TOTAL REVENUE · ONE STOP PHARMACY · CASH POSTED THROUGH: 12-31-11

ONE STOP PHARMACY · CASH POSTED THROUGH: 12-31-11

| BATCH # PURCHASED | BILLING PERIOD |
|---|---|
| 1 - 4 | January 2010 |
| 5 - 8 | February 2010 |
| 9 - 12 | March 2010 |
| 13 - 16 | April 2010 |
| 17 - 21 | May 2010 |
| 22 - 25 | June 2010 |
| 26 - 29 | July 2010 |
| 30 - 34 | August 2010 |
| 35 - 38 | September 2010 |
| 39 - 42 | October 2010 |
| 43 - 46 | November 2010 |
| 47 - 52 | December 2010 |
| 53 - 56 | January 2011 |
| 57 - 60 | February 2011 |
| 61 - 64 | March 2011 |
| 65 - 68 | April 2011 |
| 69 - 73 | May 2011 |
| 74 - 77 | June 2011 |
| 78 - 82 | July 2011 |
| 83 - 86 | August 2011 |
| 87 - 90 | September 2011 |
| 91 - 95 | October 2011 |
| 96 - 99 | November 2011 |
| 100 - 103 | December 2011 |

| BILLING PERIOD | PURCHASE DATE | GROSS AMOUNT | COPAY | EXPECTED REVENUE | PURCHASE PRICE | 2010 COLLECTIONS | 2011 COLLECTIONS | TOTAL COLLECTIONS | % OF PURCHASE | % OF NET |
|---|---|---|---|---|---|---|---|---|---|---|
| January 2010 | 01/25/10 | 337,058.33 | 20,436.04 | 316,622.29 | 284,960.07 | 289,655.33 | 40,704.00 | 330,359.33 | 115.93% | 104.34% |
| February 2010 | 03/03/10 | 293,444.09 | 15,992.48 | 277,451.61 | 255,335.11 | 267,795.00 | 23,721.09 | 291,516.09 | 114.17% | 105.07% |
| March 2010 | 03/30/10 | 307,893.70 | 16,622.89 | 291,270.81 | 273,794.57 | 277,384.78 | 27,834.27 | 305,219.05 | 111.48% | 104.79% |
| April 2010 | 04/28/10 | 294,772.74 | 13,976.60 | 280,796.14 | 263,948.37 | 266,571.05 | 24,195.09 | 290,766.14 | 110.16% | 103.55% |
| May 2010 | 06/01/10 | 378,027.35 | 14,837.56 | 363,189.79 | 341,398.41 | 355,482.82 | 22,269.64 | 377,752.26 | 110.65% | 104.01% |
| June 2010 | 07/02/10 | 293,330.58 | 9,574.41 | 283,756.17 | 266,730.61 | 277,382.83 | 16,245.11 | 293,627.94 | 110.08% | 103.48% |
| July 2010 | 07/30/10 | 289,336.38 | 9,121.77 | 280,214.61 | 263,401.73 | 269,856.89 | 20,197.08 | 290,052.97 | 110.12% | 103.51% |
| August 2010 | 08/30/10 | 368,514.28 | 10,854.03 | 357,660.25 | 324,868.03 | 353,068.13 | 19,014.71 | 372,082.84 | 114.53% | 104.03% |
| September 2010 | 09/27/10 | 261,295.87 | 8,407.79 | 252,888.08 | 227,599.29 | 211,797.79 | 52,103.03 | 263,900.82 | 115.95% | 104.35% |
| October 2010 | 10/25/10 | 297,670.22 | 11,700.11 | 285,970.11 | 257,373.13 | 278,985.87 | 13,102.85 | 292,088.72 | 113.49% | 102.14% |
| November 2010 | 11/22/10 | 283,633.60 | 8,769.90 | 274,863.70 | 247,377.33 | 149,557.51 | 136,317.11 | 286,874.62 | 116.77% | 105.10% |
| December 2010 | 01/04/11 | 432,706.10 | 12,959.84 | 419,746.26 | 377,771.63 | 65,897.37 | 358,146.81 | 423,844.18 | 112.20% | 100.98% |
| January 2011 | 01/31/11 | 284,111.72 | 13,632.37 | 270,479.35 | 243,431.41 | 0.00 | 269,158.20 | 269,158.20 | 110.57% | 99.51% |
| February 2011 | 03/02/11 | 308,481.41 | 10,487.75 | 297,993.66 | 268,194.29 | 0.00 | 294,302.65 | 294,302.65 | 109.73% | 98.76% |
| March 2011 | 03/30/11 | 284,395.55 | 8,759.52 | 275,636.03 | 248,072.44 | 0.00 | 283,073.65 | 283,073.65 | 114.11% | 102.70% |
| April 2011 | 04/28/11 | 274,074.78 | 9,738.44 | 264,336.34 | 237,902.70 | 0.00 | 243,061.27 | 243,061.27 | 102.17% | 91.96% |
| May 2011 | 06/03/11 | 308,114.94 | 11,471.64 | 296,643.30 | 266,978.90 | 0.00 | 300,603.57 | 300,603.57 | 112.59% | 101.34% |
| June 2011 | 06/28/11 | 290,469.54 | 8,854.78 | 281,614.86 | 253,453.38 | 0.00 | 279,276.96 | 279,276.96 | 110.19% | 99.17% |
| July 2011 | 08/04/11 | 314,072.67 | 10,399.19 | 303,673.48 | 273,306.14 | 0.00 | 303,126.41 | 303,126.41 | 110.91% | 99.82% |
| August 2011 | 08/29/11 | 254,029.14 | 8,166.14 | 245,863.00 | 221,276.71 | 0.00 | 214,723.22 | 214,723.22 | 97.04% | 87.33% |
| September 2011 | 09/27/11 | 283,462.47 | 7,600.03 | 275,862.44 | 248,276.19 | 0.00 | 240,030.10 | 240,030.10 | 96.68% | 87.01% |
| October 2011 | 11/01/11 | 319,710.36 | 10,004.24 | 309,706.12 | 278,735.51 | 0.00 | 297,728.18 | 297,728.18 | 106.81% | 96.13% |
| November 2011 | 11/28/11 | 243,619.44 | 7,703.90 | 235,915.54 | 212,323.98 | 0.00 | 218,025.78 | 218,025.78 | 102.69% | 92.42% |
| December 2011 | 12/30/11 | 242,522.88 | 7,909.10 | 234,613.78 | 211,152.40 | 0.00 | 111,349.15 | 111,349.15 | 52.73% | 47.46% |
|  |  | 7,244,748.24 | 267,980.52 | 6,976,767.72 | 6,347,862.53 | 3,063,234.17 | 3,811,309.93 | 6,874,544.10 | 108.30% | 98.53% |

GOVERNMENT EXHIBIT
252
2:15-CR-00198-GMN

| FACILITY | 2009 COLLECTIONS | 2010 COLLECTIONS | 2011 COLLECTIONS |
|---|---|---|---|
| MRI Purchased claims... Encino/Anaheim/Camarillo | 0.00 | 24,525.00 | 30,946.81 |
| Friedman Professional Mgmt | | | |
| Good Shepherd I & II | 682.32 | 0.00 | 0.00 |

| | 2009 COLLECTIONS | 2010 COLLECTIONS | 2011 COLLECTIONS |
|---|---|---|---|

| | 2009 | 2010 | 2011 |
|---|---|---|---|
| **GRAND TOTAL** | **10,566,280.02** | **17,849,889.36** | **24,371,011.32** |

| | | | |
|---|---|---|---|
| Med-Health Pharmaceutical Products | 3,603,357.79 | 5,668,509.83 | 6,763,683.74 |
| Encino/Anaheim/Ontario/Camarillo | 6,486,956.31 | 5,127,606.44 | 4,804,546.72 |
| One-Stop Pharmacy | 0.00 | 3,063,234.17 | 3,811,309.93 |
| Hoy's Inc. | 0.00 | 3,092,591.25 | 8,100,572.07 |
| GRAND TOTAL | 10,566,280.02 | 17,849,889.36 | 24,371,011.32 |
| 6% of Collections | 633,976.80 | 1,070,993.36 | 1,462,260.68 |
| Grand Total of 6% Collections | | | 3,167,230.84 |

GOVERNMENT EXHIBIT
247
2:15-CR-00198-GMN

BUY SUMMARY

| BUY # | FACILITY | # OF CLAIMS | DATE RANGE | RETAIL TOTAL | COPAY | PURCHASE PRICE % OF EXPECTED | PURCHASE PRICE |
|-------|----------|-------------|------------|--------------|-------|------------------------------|----------------|
| 1 | HOY'S HOSPITAL PHARMACY | 203 | 10-01-09 - 10-31-09 | 17,145.87 | 3,093.32 | — | 13,209.40 |
| 1 | HOY'S DRUG STORE | 673 | 10-01-09 - 10-31-09 | 45,221.49 | 8,588.43 | | 34,435.08 |
| 2 | HOY'S HOSPITAL PHARMACY | 498 | 11-01-09 - 11-30-09 | 33,253.64 | 2,299.37 | 94% | 29,097.01 |
| 2 | HOY'S DRUG STORE | 868 | 11-01-09 - 11-30-09 | 65,175.16 | 8,641.28 | 94% | 53,141.85 |
| 3 | HOY'S HOSPITAL PHARMACY | 973 | 12-01-09 - 12-31-09 | 74,824.15 | 5,295.16 | — | 65,357.25 |
| 3 | HOY'S DRUG STORE | 1733 | 12-01-09 - 12-31-09 | 123,069.68 | 19,674.83 | — | 97,191.16 |
| | GRAND TOTAL | 4948 | | 358,689.99 | 47,592.39 | 94% | 292,431.74 |

94%

94%

94%

GOVERNMENT
EXHIBIT
217
2:15-CR-00198-GMN

| FACILITY | 2009 COLLECTIONS | 2010 COLLECTIONS | 2011 COLLECTIONS |
|---|---|---|---|
| MRI Purchased claims... | 0.00 | 24,525.00 | 30,946.81 |
| Encino/Anaheim/Camarillo | | | |
| Friedman Professional Mgmt | | | |
| Good Shepherd I & II | 682.32 | 0.00 | 0.00 |
| Hoy's Inc. | 0.00 | 3,092,591.25 | 8,100,572.07 |
| Med-Health Medical Supplies | 475,283.60 | 579,959.66 | 569,918.27 |
| **GRAND TOTAL** | **10,566,280.02** | **17,849,889.36** | **24,371,011.32** |
| One-Stop Pharmacy | 0.00 | 3,063,234.17 | 3,811,309.93 |
| Hoy's Inc. | 0.00 | 3,092,591.25 | 8,100,572.07 |
| GRAND TOTAL | 10,566,280.02 | 17,849,889.36 | 24,371,011.32 |
| 6% of Collections | 633,976.80 | 1,070,993.36 | 1,462,260.68 |
| Grand Total of 6% Collections | | | 3,167,230.84 |

GOVERNMENT
EXHIBIT
247
2:15-CR-00198-GMN

September 06, 2012

Dear Mr. Fujinaga,

I am sorry I have no records for the year of 1999 – 2006.



| YEAR | TOTAL INTEREST PAID | OUTSTANDING BALANCE |
|------|---------------------|---------------------|
| 1999 | 73,025 | N/A |
| 2000 | 1,617,217 | N/A |
| 2004 | 16,079,043 | N/A |
| 2006 | | |
| 2011 | 72,892,964 | 1,415,362,111 |
| 2008 | 50,888,750 | 955,206,506 |
| 2009 | 58,285,812 | 1,043,659,983 |
| 2010 | 66,987,394 | 1,194,268,974 |
| 2011 | 72,892,964 | 1,415,362,111 |
| as of Aug 2012 | 48,056,433 | 1,536,333,738 |

Thank you,

Shiu Ling

GOVERNMENT
EXHIBIT
**249**
2:15-CR-00198-GMN

Case 2:15-cr-00093-GMN-NJK Document 3561 Filed 08/13/20 Page 84 of 126



**From:** PETERCMUNOZ@aol.com
**To:** Raven Gilmore
**Subject:** Re: Hoys buys
**Date:** Wednesday, January 16, 2013 9:40:22 AM

Raven, up to now I still do not understand why they are selling or buying revenue...

MR Raven, up to now I still do not understand why they are selling or buying revenue...

No checks were issued for 2012 for Hoy's lock box...

Regarding the pay back to MRI for the receivables, I myself have never posted or credited any cash payment for the return or payment of receivables...

For 2012 Hoy's cash flow shortages are all advance or loaned by MRI....

peter

GOVERNMENT
EXHIBIT
**188**
2:15-CR-00198-GMN

| | | |
|---|---|---|
| 7. Advanced Marketing Fee-Factoring Co shows 1.353 Million in Fee Expense yet Factoring is showing only $732K in Revenue. Please explain. | 9/7/11 | |
| 8. Acct#424 Int Inc-Harmon Primary- What is this $400,000? | 9/7/11 | |
| 9. Why is there no income in MRI? Where is the income from the purchased receivables? | 9/7/11 | |
| 10. Why does MRI pay for Japan's office? Does MRI in the US own MRI in Japan? Print G/L detail for Acct#690 | 9/7/11 | |
| 11. Need Ed's W-2 from MRI for 2010 | 9/7/11 | |
| 12. Do you have a loan statement that ties to Acct#253 A/P Wells Fargo? | 9/7/11 | |

| 9. Why is there no income in MRI? Where is the income from the purchased receivables? | 9/7/11 |
|---|---|

| | | |
|---|---|---|
| 14. What are employee benefits for? | 9/7/11 | |
| 15. Acct#661 Equipment Lease – What are these leases for? Should they be capitalized? Can you send the G/L detail and sample invoice for an equipment lease? | 9/7/11 | |
| 16. Are there any fixed assets that should be depreciated in Office Supplies or Repairs & Maintenance? Fixed assets can include purchases of equipment, furniture, and tools, etc. | 9/7/11 | |

GOVERNMENT EXHIBIT
106B
2:15-CR-00198-GMN

| | |
|---|---|
| **From:** | PETERCMUNOZ@aol.com |
| **To:** | raven@gilmorecpas.com |
| **Subject:** | Re: MRI International Question List 2010 |
| **Date:** | Wednesday, September 07, 2011 4:27:35 PM |
| **Attachments:** | mri detail acct#253.pdf |
| | mri detail acct#650.pdf |
| | mri detail acct#660.pdf |
| | mri detail acct#661.pdf |
| | mri detail acct#690.pdf |

Answer #9 You have to ask Ed Fujinaga about revenue. Yes, there is revenue on the purchase of medical receivables but not enough to offset expenses... Every year is the same problem with revenue, not enough or no revenue for MRI....

> **Answer #9 You have to ask Ed Fujinaga about revenue. Yes, there is revenue on the purchase of medical receivables but not enough to offset expenses... Every year is the same problem with revenue, not enough or no revenue for MRI....**

Answer #12 No loan statement, just the daily amount of funds I borrow or take out of the wells fargo bank acct.on a daily basis. see detail

Answer #13 See detail all are business expenses no personal, they just spend too much...

Answer #14 See detail Health & medical for employess

Answer #15  See detail, NO should not be capitalized...... Monthly expenses & maintenence..

Answer#16  NO... Office expense are actual reimbursement and supplies to operate.  No Capitalization....

Will be back MONDAY................................

GOVERNMENT
EXHIBIT
**109**
2:15-CR-00198-GMN



TRANSMISSION VERIFICATION REPORT

TIME : 11/30/2010 09:28
NAME :

ONE STOP PHARMACY CENTER

TRANSMISSION VERIFICATION REPORT

TIME     : 11/30/2010 09:28
NAME     :
FAX      :
TEL      :
SER.#    : 000K7N243120

DATE,TIME              11/30  09:27
FAX NO./NAME           ED
DURATION               00:00:58
PAGE(S)                05
RESULT                 OK
MODE                   STANDARD
                       ECM

| | BUY | Sweep | Cash Balance |
|---|---|---|---|
| February 9, 2010 | | $ 227,491.31 | $ 227,491.31 |
| February 9, 2010 $ 227,491.31 | | | $ - |
| | | $ 180,530.45 | $ 180,530.45 |
| March 2, 2010 $ 57,468.76 | | | $ 123,061.69 |
| March 2, 2010 $ 66,887.93 | | | $ 56,173.76 |
| March 2, 2010 $ 56,173.76 | | | $ - |
| | | $ 203,935.47 | $ 203,935.47 |
| March 22, 2010 $ 71,662.05 | | | $ 132,273.42 |
| March 22, 2010 $ 65,334.21 | | | $ 66,939.21 |
| March 22, 2010 $ 66,939.21 | | | $ - |
| | | $ 138,161.94 | $ 138,161.94 |
| March 31, 2010 $ 66,252.94 | | | $ 71,909.00 |
| March 31, 2010 $ 71,909.00 | | | $ - |
| | | $ 138,174.44 | $ 138,174.44 |
| April 20, 2010 $ 66,265.44 | | | $ 71,909.00 |
| April 20, 2010 $ 71,909.00 | | | $ - |
| | | $ 197,682.93 | $ 197,682.93 |
| May 7, 2010 $ 72,511.35 | | | $ 125,171.58 |
| May 7, 2010 $ 59,442.19 | | | $ 65,729.39 |
| May 7, 2010 $ 65,729.39 | | | $ - |
| | | $ 53,382.49 | $ 53,382.49 |
| May 13, 2010 $ 53,382.49 | | | $ 63,970.58 |
| | | $ 63,970.58 | $ 63,970.58 |
| June 2, 2010 $ 63,970.58 | | | $ - |
| | | $ 212,058.49 | $ 212,058.49 |
| June 9, 2010 $ 66,907.04 | | | $ 145,150.95 |
| June 9, 2010 $ 74,612.66 | | | $ 70,538.29 |
| June 9, 2010 $ 70,538.29 | | | $ - |

**BUY**          **Sweep**          **Cash Balance**

| | | | | |
|---|---|---|---|---|
| Deposit from MRI general Acct. | August 11, 2010 | | $ 130,757.04 | $ 130,757.04 |
| | August 11, 2010 $ 64,478.12 | | | $ 66,278.92 |

**Total Funded for Buys**          $ 2,274,437.41   $ 2,274,437.41          $          -          **Cash Available**

| | | | | |
|---|---|---|---|---|
| | September 22, 2010 $ 83,633.65 | | | $ 123,879.71 |
| | September 22, 2010 $ 62,501.24 | | | $ - |
| | September 22, 2010 $ 71,378.47 | | | |

**Total Funded for Buys**          $ 2,274,437.41   $ 2,274,437.41          $

GOVERNMENT
EXHIBIT
223
2:15-CR-00198-GMN



Case 2:15-cr-00188-JNK Document 3951 Filed 08/18/20 Page 93 of 126





GX 476

# MRI Related Accounts
## January 2009 – May 2013

**Investors**

- MRI Holding Accounts
- Class A Accounts
- Select A Accounts

**MRI General Account**

- Claims Servicing of America
- CSA Healthcare Int'l Funding
- CSA Service Center
- CSA Surgical Centers of America LLC
- The Factoring Company X
- The Factoring Company X III Inc
- Med-Health Medical Supplies
- Med-Health Pharma
- Med-Health Pharmaceutical Products
- Med-Health Consulting Services
- EBJ&F LLC
- Four Seasons ASC Mgt (Anaheim)
- Four Seasons ASC Mgt (Ontario)
- Nations Surgery Center Anaheim
- Nations Surgery Center Encino
- Nations Surgery Center Ontario
- Nations Surgery Center Camarillo
- One-Stop Pharmacy
- Ryan's Pharmacy
- Wheatridge Pharmacy
- MRI/Huntington Beach
- Harmon Primary Care
- HMC Primary Care
- HMC Service Center
- Hoy's Inc
- MRI Medical Mgt Group

## Application Procedure

**1** Fill out the three-page agreement/application forms.
- Form 1 (white): to be sent by postal mail to the U.S. head office
- Form 2 (yellow): to be sent by postal mail to the MRI Customer Service Center
- Form 3 (pink): to be kept as a customer copy

**2** Send the first page (white) of the three-page application form by postal mail to the U.S. headquarters.
Please affix a 110 yen stamp to the enclosed envelope printed

**7 For the investor**

About four weeks following confirmation of your contract details, we will send you your certificate and a written confirmation of the deposit of funds into the escrow agents account.

These forms will be sent from our U.S. headquarters via international courier. Depending on your region, the forms may be delivered by an affiliated Japanese courier.



MRI Customer Service Center at 0120-445-591.
(We may be unable to issue your certificate if we cannot receive confirmation.)

**6** U.S. Headquarters
Following conformation of deposit into the escrow agents account, we will issue your certificate.

**7** For the investor
About four weeks following confirmation of your contract details, we will send you your certificate and a written confirmation of the deposit of funds into the escrow agents account.
These forms will be sent from our U.S. headquarters via international courier. Depending on your region, the forms may be delivered by an affiliated Japanese courier.

20

**GOVERNMENT EXHIBIT**
**9**
2:15-CR-00198-GMN

# Count 1



## CORPORATE CERTIFICATE OF INVESTMENT
### THE UNITED STATES OF AMERICA

**50,000**   **50,000**

01120627   **50,000**

## Certificate of Investment

This Certifies that the sum of ___ **FIFTY THOUSAND DOLLARS** ___ has been deposited with the Sterling Escrow Company in Las Vegas, Nevada, Trustee, for the M.R.I Series 11-2 Select A Certificates. Said sum shall be secured at all times by a First Priority Lien on a pool of Medical Accounts Receivable with a 1 to 1 solvency ratio. This Series 11-2 Select A Corporate Certificate of Investment will be payable to the order of ___ --------------**FUMI NONAKA**-------------- ___ or to a duly authorized attorney or beneficiary(s) at maturity on ___ **January 18, 2013** ___ , with interest computed as indicated below:

Option B
Interest will be compounded at a rate of seven and one half percent (7.50%) per annum and will be added to the account until the maturity date. The original deposit of and accrued interest on this Certificate is due and payable no later than the above stated maturity date.

This Corporate Certificate of Investment may not be offered to be sold, or sold or otherwise transferred to any person or entity, who is a citizen of, is domiciled in, or is otherwise residing within the United States of America. Neither may this Corporate Certificate of Investment be offered to be sold, sold or otherwise transferred outside of the United States of America to any person or entity who is a citizen of, has its domicile in, or resides in, The United States of America. This Certificate of Investment can only be transferred by the holder through the surrender of this instrument and the reissuance of this instrument by borrower to the new holder, or the issuance of a new instrument by borrower to the new holder.

In Witness Whereof, MRI International, Inc. has caused this MRI Series 11-2 Select A Certificate to be duly executed by its authorized officers.

Dated: ___ **January 18, 2011** ___



Edwin Y. Fujinaga
Secretary

Edwin Y. Fujinaga
President

**50,000**   **THE UNITED STATES OF AMERICA**   **50,000**

GOVERNMENT EXHIBIT
**94**
2:15-CR-00198-GMN

**Count 2**

## Certificate 01221705

15,000,000 — CORPORATE CERTIFICATE OF INVESTMENT — 15,000,000
THE UNITED STATES OF AMERICA
15,000,000

01221705



# Certificate of Investment
## FIFTEEN MILLION

This Certifies that the sum of ___ deposited with the Sterling Escrow Company in Las Vegas, Nevada, Trustee ___ Certificates. Said sum shall be secured at all times by a First Priority Lien on ___ with a 1 to 1 solvency ratio. This Series 12-2 Select A Corporate Certificate ___ order of ___ -------------HIDEKI HASEGAWA------------- ___ or beneficiary(s) at maturity on ___ April 26, 2017

**OPTION A**
Interest will be payable at a rate of eight percent (8.0%) per annum and will ___ April 26, 2013 ___ to the account-holder. The original deposit of and ___ payable no later than the above stated maturity date.

This Corporate Certificate of Investment may not be offered to sold, or sold or otherwise transferred to any person ___ residing within the United States of America. Neither may this Corporate Certificate of Investment be offered to be sold ___ of America to any person or entity who is a citizen of, has is domicile in, or resides in, The United States of America ___ the holder through the surrender of this instrument and the reissuance of this instrument by borrower to the new hold ___ holder.

In Witness Whereof, MRI International, Inc. has caused this MRI Series 12-2 Select A Certi ___

Dated: ___ April 26, 2012

Edwin Y. Fujinaga
Secretary


SEAL

15,000,000 — THE UNITED STATES OF AM ___

---

## Certificate 01221706

15,000,000 — CORPORATE CERTIFICATE OF INVESTMENT — 15,000,000
THE UNITED STATES OF AMERICA
15,000,000

01221706



# Certificate of Investment
## FIFTEEN MILLION YEN ___ has been

This Certifies that the sum of ___ has been deposited with the Sterling Escrow Company in Las Vegas, Nevada, Trustee, for the MRI Series 12-2 Select A Certificates. Said sum shall be secured at all times by a First Priority Lien on a pool of Medical Accounts Receivable with a 1 to 1 solvency ratio. This Series 12-2 Select A Corporate Certificate of Investment will be payable to the order of ___ -------------HIDEKI HASEGAWA------------- ___ or to a duly authorized attorney or beneficiary(s) at maturity on ___ April 26, 2017 ___, with interest computed as indicated below:

**OPTION A**
Interest will be payable at a rate of eight percent (8.0%) per annum and will be paid every 365 days, commencing on ___ April 26, 2013 ___ to the account-holder. The original deposit of and accrued interest on this Certificate is due and payable no later than the above stated maturity date.

This Corporate Certificate of Investment may not be offered to sold, or sold or otherwise transferred to any person or entity, who is a citizen of, is domiciled in, or residing within the United States of America. Neither may this Corporate Certificate of Investment be offered to be sold, sold or otherwise transferred outside of the United States of America to any person or entity who is a citizen of, has is domicile in, or resides in, The United States of America. This Certificate of Investment can only be transferred by the holder through the surrender of this instrument and the reissuance of this instrument by borrower to the new holder, or the issuance of a new instrument by borrower to the new holder.

In Witness Whereof, MRI International, Inc. has caused this MRI Series 12-2 Select A Certificate to be duly executed by its authorized officers.

Dated: ___ April 26, 2012

Edwin Y. Fujinaga
Secretary


SEAL

Edwin Y. Fujinaga
President

15,000,000 — THE UNITED STATES OF AMERICA — 15,000,000

GOV ___
2:15-C ___

# Count 3

100,000 CORPORATE CERTIFICATE OF INVESTMENT 100,000

THE UNITED STATES OF AMERICA

01223188 100,000

Certificate of Investment

This Certifies that the sum of ONE HUNDRED THOUSAND DOLLARS has been deposited with the Sterling Escrow Company in Las Vegas, Nevada, Trustee, for the MRI Series 12-2 Select A Certificates. Said sum shall be secured at all times by a First Priority Lien on a pool of Medical Accounts Receivable with a 1 to 1 solvency ratio. This Series 12-2 Select A Corporate Certificate of Investment will be payable to the order of ----------NAOTAKE YAMAGUCHI and EMI YAMADA---------- or to a duly authorized attorney or beneficiary(s) at maturity on July 5, 2017, with interest computed as indicated below:

Option B

Interest will be compounded at a rate of eight and one half percent (8.50%) per annum and will be added to the account until the maturity date. The original deposit of and accrued interest on this Certificate is due and payable no later than the above stated maturity date.

This Corporate Certificate of Investment may not be offered to be sold, or sold or otherwise transferred to any person or entity, who is a citizen of, is domiciled in, or is otherwise residing within the United States of America. Neither may this Corporate Certificate of Investment be offered to be sold, sold or otherwise transferred outside of the United States of America to any person or entity who is a citizen of, has its domicile in, or resides in, The United States of America. This Certificate of Investment can only be transferred by the holder through the surrender of this instrument and the reissuance of this instrument by borrower to the new holder, or the issuance of a new instrument by borrower to the new holder.

In Witness Whereof, MRI International, Inc. has caused this MRI Series 12-2 Select A Certificate to be duly executed by its authorized officers.

Dated: July 5, 2012

Edwin Y. Fujinaga, Secretary — Edwin Y. Fujinaga, President

100,000 THE UNITED STATES OF AMERICA 100,000

GOVERNMENT EXHIBIT 158A 2:15-CR-00198-GMN

DOJ_PROD_RECEIVER_00234514

Government Exhibits 158A - 158D



# Count 4

01213057

01213059

01213055

01213058

01213054

01213056

CORPORATE CERTIFICATE OF INVESTMENT

THE UNITED STATES OF AMERICA

100,000

Certificate of Investment

This Certifies that the sum of ONE HUNDRED THOUSAND DOLLARS has been deposited with the Sterling Escrow Company in Las Vegas, Nevada, Trustee, for the MRI Series 2012 Class A Certificates. Said sum shall be secured at all times by a First Priority Lien on a pool of Medical Accounts Receivable with a 1 to 1 solvency ratio. This Series 2012 Class A Corporate Certificate of Investment will be payable to the order of ----------IKUO MIYAHARA and AYAKO MIYAHARA---------- or to a duly authorized attorney or beneficiary(s) at maturity on September 4, 2017, with interest computed as indicated below.

Option B

Interest will be compounded at a rate of eight and one half percent (8.50%) per annum and will be added to the account until the maturity date. The original deposit of and accrued interest on this Certificate is due and payable no later than the above stated maturity date.

This Corporate Certificate of Investment may not be offered to be sold, or sold or otherwise transferred to any person or entity, who is a citizen of, is domiciled in, or is otherwise residing within the United States of America. Neither may this Corporate Certificate of Investment be offered to be sold, sold or otherwise transferred outside of the United States of America to any person or entity who is a citizen of, has its domicile in, or resides in, The United States of America. This Certificate of Investment can only be transferred by the holder through the surrender of this instrument and the reissuance of this instrument by borrower to the new holder, or the issuance of a new instrument by borrower to the new holder.

In Witness Whereof, MRI International, Inc. has caused this MRI Series 2012 Class A Certificate to be duly executed by its authorized officers.

Dated: September 4, 2012

Edwin Y. Fujinaga, Secretary

SEAL

Edwin Y. Fujinaga, President

DOJ_PROD_INT_0000139

DOJ_PROD_INT_0000140

DOJ_PROD_INT_00001404

Government Exhibits 166A-166F

# Count 5

15,000,000

**CORPORATE CERTIFICATE OF INVESTMENT**
THE UNITED STATES OF AMERICA

15,000,000

01223917

15,000,000

## Certificate of Investment

This Certifies that the sum of _____ FIFTEEN MILLION YEN _____ has been deposited with the Sterling Escrow Company in Las Vegas, Nevada, Trustee, for the MRI Series 12-2 Select A Certificates. Said sum shall be secured at all times by a First Priority Lien on a pool of Medical Accounts Receivable with a 1 to 1 solvency ratio. This Series 12-2 Select A Corporate Certificate of Investment will be payable to the order of _____ EIKO UCHIYAMA and HIDEYO UCHIYAMA _____ or to a duly authorized attorney or beneficiary(s) at maturity on _____ September 14, 2014 _____, with interest computed as indicated below:

OPTION A
Interest will be payable at a rate of eight percent (8.0%) per annum and will be paid every 365 days, commencing on _____ September 14, 2013 _____ to the account-holder. The original deposit of and accrued interest on this Certificate is due and payable no later than the above stated maturity date.

This Corporate Certificate of Investment may not be offered to be sold, or sold or otherwise transferred to any person or entity, who is a citizen of, is domiciled in, or is otherwise residing within the United States of America. Neither may this Corporate Certificate of Investment be offered to be sold, sold or otherwise transferred outside of the United States of America to any person or entity who is a citizen of, has its domicile in, or resides in, The United States of America. This Certificate of Investment can only be transferred by the holder through the surrender of this instrument and the reissuance of this instrument by borrower to the new holder, or the issuance of a new instrument by borrower to the new holder.

In Witness Whereof, MRI International, Inc. has caused this MRI Series 12-2 Select A Certificate to be duly executed by its authorized officers.

Dated: _____ September 14, 2012 _____

Edwin Y. Fujinaga
Secretary

Edwin Y. Fujinaga
President

15,000,000

**THE UNITED STATES OF AMERICA**

15,000

GOVERNMENT EXHIBIT
170
2:15-CR-00198-GMN

DOJ_PROD_RECEIVER_00200819

# Count 6

**7,500,000**          **CORPORATE CERTIFICATE OF INVESTMENT**          **7,500,000**
THE UNITED STATES OF AMERICA

**01225099**          **7,500,000**

# Certificate of Investment

This Certifies that the sum of SEVEN MILLION FIVE HUNDRED THOUSAND YEN has been deposited with the Sterling Escrow Company in Las Vegas, Nevada, Trustee, for the MRI Series 12-2 Select A Certificates. Said sum shall be secured at all times by a First Priority Lien on a pool of Medical Accounts Receivable with a 1 to 1 solvency ratio. This Series 12-2 Select A Corporate Certificate of Investment will be payable to the order of --------------TAKAO MAKIMURA-------------- or to a duly authorized attorney or beneficiary(s) at maturity on November 15, 2014, with interest computed as indicated below:

OPTION A
Interest will be payable at a rate of seven percent (7.0%) per annum and will be paid every 365 days, commencing on November 15, 2013 to the account-holder. The original deposit of and accrued interest on this Certificate is due and payable no later than the above stated maturity date.

This Corporate Certificate of Investment may not be offered or be sold or otherwise transferred to any person or entity, who is a citizen of, is domiciled in, or is otherwise residing within the United States of America. Neither may this Corporate Certificate of Investment be offered to be sold, sold or otherwise transferred outside of the United States of America to any person or entity who is a citizen of, has its domicile in, or resides in, The United States of America. This Certificate of Investment can only be transferred by the holder through the surrender of this instrument and the reissuance of this instrument by borrower to the new holder, or the issuance of a new instrument by borrower to the new holder.

In Witness Whereof, MRI International, Inc. has caused this MRI Series 12-2 Select A Certificate to be duly executed by its authorized officers.

Dated: November 15, 2012

Edwin Y. Fujinaga
Secretary

SEAL

Edwin Y. Fujinaga
President

**7,500,000**          THE UNITED STATES OF AMERICA          **7,50**

GOVERNMENT EXHIBIT
**177**
2:15-CR-00198-GMN

DOJ_PROD_RECEIVER_00114915

# Count 7

01225112

01225111

100,000 CORPORATE CERTIFICATE OF INVESTMENT 100,000

THE UNITED STATES OF AMERICA

01225110 100,000

**Certificate of Investment**

*This Certifies that the sum of* ONE HUNDRED THOUSAND DOLLARS *has been deposited with the Sterling Escrow Company in Las Vegas, Nevada, Trustee, for the MRI Series 12-2 Select A Certificates. Said sum shall be secured at all times by a First Priority Lien on a pool of Medical Accounts Receivable with a 1 to 1 solvency ratio. This Series 12-2 Select A Corporate Certificate of Investment will be payable to the order of* --------------HIDEKI HASEGAWA-------------- *or to a duly authorized attorney or beneficiary(s) at maturity on* November 15, 2017*, with interest computed as indicated below:*

Option B

*Interest will be compounded at a rate of eight and one half percent (8.50%) per annum and will be added to the account until the maturity date. The original deposit of and accrued interest on this Certificate is due and payable no later than the above stated maturity date.*

This Corporate Certificate of Investment may not be offered to be sold, or sold or otherwise transferred to any person or entity, who is a citizen of, is domiciled in, or is otherwise residing within the United States of America. Neither may this Corporate Certificate of Investment be offered to be sold, sold or otherwise transferred outside of the United States of America to any person or entity who is a citizen of, has its domicile in, or resides in, The United States of America. This Certificate of Investment can only be transferred by the holder through the surrender of this instrument and the reissuance of this instrument by borrower to the new holder, or the issuance of a new instrument by borrower to the new holder.

*In Witness Whereof* MRI International, Inc. has caused this MRI Series 12-2 Select A Certificate to be duly executed by its authorized officers.

*Dated:* November 15, 2012

Edwin Y. Fujinaga, Secretary

Edwin Y. Fujinaga, President

100,000 THE UNITED STATES OF AMERICA 100,000

Government Exhibits 176A-C

# Count 8

## Certificate 1 (50,000)

**50,000** | CORPORATE CERTIFICATE OF INVESTMENT | **50,000**
THE UNITED STATES OF AMERICA

**50,000**

**01320139**



# Certificate of Investment
### FIFTY THOUSAND DOLLARS

This Certifies that the sum of [illegible]
deposited with the Sterling Escrow Company in Las Vegas, Nevada, Trustee, for the [illegible]
Certificates. Said sum shall be secured at all times by a First Priority Lien on a pool of [illegible]
with a 1 to 1 solvency ratio. This Series 13-2 Select A Corporate Certificate of Inv[illegible]
order of ——————FUMI NONAKA————————
or beneficiary(s) at maturity on ___January 18, 2015___ with interest [illegible]

**Option B**
Interest will be compounded at a rate of seven and one half percent (7.50%) per annum and [illegible]
the maturity date. The original deposit of and accrued interest on this Certificate is due and [illegible]
stated maturity date.

This Corporate Certificate of Investment may not be offered to be sold, or sold or otherwise transferred to any person or entity, who [illegible]
residing within the United States of America. Neither may this Corporate Certificate of Investment be offered to be sold, sold or otherwise [illegible]
of America to any person or entity who is a citizen of, has its domicile in, or resides in, The United States of America. This Certif[illegible]
the holder through the surrender of this instrument and the reissuance of this instrument by borrower to the new holder, or the issuan[illegible]
holder.

*In Witness Whereof,* MRI International, Inc. has caused this MRI Series 13-2 Select A Certificate to be du[illegible]

Dated ___January 18, 2013___



Edwin Y. Fujinaga
*Secretary*

**50,000** | THE UNITED STATES OF AMERICA

## Certificate 2 (10,000)

**10,000** | CORPORATE CERTIFICATE OF INVESTMENT | **10,000**
THE UNITED STATES OF AMERICA

**01320138**

**10,000**



# Certificate of Investment
### TEN THOUSAND DOLLARS   has been

This Certifies that the sum of _____
deposited with the Sterling Escrow Company in Las Vegas, Nevada, Trustee, for the MRI Series 13-2 Select A
Certificates. Said sum shall be secured at all times by a First Priority Lien on a pool of Medical Accounts Receivable
with a 1 to 1 solvency ratio. This Series 13-2 Select A Corporate Certificate of Investment will be payable to the
order of ——————FUMI NONAKA————————   or to a duly authorized attorney
or beneficiary(s) at maturity on ___January 18, 2015___ with interest computed as indicated below:

**Option B**
Interest will be compounded at a rate of six and one half percent (6.50%) per annum and will be added to the account until
the maturity date. The original deposit of and accrued interest on this Certificate is due and payable no later than the above
stated maturity date.

This Corporate Certificate of Investment may not be offered to be sold, or sold or otherwise transferred to any person or entity, who is a citizen of, is domiciled in, or is otherwise
residing within the United States of America. Neither may this Corporate Certificate of Investment be offered to be sold, sold or otherwise transferred outside of the United States
of America to any person or entity who is a citizen of, has its domicile in, or resides in, The United States of America. This Certificate of Investment can only be transferred by
the holder through the surrender of this instrument and the reissuance of this instrument by borrower to the new holder, or the issuance of a new instrument by borrower to the new
holder.

*In Witness Whereof,* MRI International, Inc. has caused this MRI Series 13-2 Select A Certificate to be duly executed by its authorized officers.

Dated ___January 18, 2013___



Edwin Y. Fujinaga
*Secretary*

Edwin Y. Fujinaga
*President*

**10,000** | THE UNITED STATES OF AMERICA | **10,0**

GOVERNMENT
EXHIBIT
190
2:15-CR-00198-GMN

## Wire Transfer Confirmation



KK

Iz 815-39

STERLING ESCROW TRUSTEE
FOR MRI SERIES 2012
1800 E DESERT INN RD
LAS VEGAS          NV 89169-3239

*For Questions or Address Corrections, Please Contact Your Store or Account Officer*

| Credit Wire Amount | Process Date Time | From | Corresponding Bank: | Status |
|---|---|---|---|---|
| 200,000.00 | 07/05/2012. 05:44 AM CT | FEDWIRE SUMITOMO MITSUI BANKING CORP NAOTAKE YAMAGUCHI N/A | N/A | COMPLETE |

Text:
021000089 CITIBANK N.A. NEW YORK, NY NEW YORK, NV UNITED STATES SUMITOMO MITSUI BANKING CORP AKA SMBC NEW YORK S0621871360601 OGB=SUMITOMO MITSUI BANKING CORPORATION 1-1-2, MARUNOUCHI, CHIYODA-KU TOKYO,JP ORG=NAOTAKE YAMAGUCHI 8-21 KOSHIEN-SUNADA-CHO NISHINOMIYA 3HI BYOGO-KEN JAPANOBI=CONTACT PERSON: JEFF CRITCHER OPI=5820124242 /ETR/ BNF=5841379471 STERLING ESCROW TRUSTEEFOR MRI SER IES 2012 SELECT A ACCOUNT, LAS VEGAS NEVADA U.SA. TEL (702)737-8887 COMPLETED TIMESTAMP 07/05/2012 05:32 AM CT

### WELLS FARGO

**Sterling Escrow**

NO  46391

Escrow No. 18522JC                                    Date:  07/05/12
  NAOTAKE YAMAGUCHI

Two Hundred Thousand Dollars and No Cents                    $  200,000.00

Wire:                          **Remarks:**

**FUNDS FOR:**
  MRI SERIES A TRUST ACCOUNT

STERLING ESCROW

BY:  *Jean Guffey*

GOVERNMENT EXHIBIT
156
2:15-CR-00198-GMN

Case 2:15-cr-00198-GMN-NJK Document 3951 Filed 08/18/20 Page 107 of 126



Use of Wire Transfer by Investor Fumi Nonaka (Count 9)

# Use of Wire Transfers to Make Deposits (Series A & Class A)













# Use of Wire Transfer by Investor of $22,047 (Count 17)

GX 502

# Count 18



CSA SERVICE CENTER, LLC
5330 S DURANGO DRIVE
LAS VEGAS, NV  89113

IRWIN UNION BANK
LAS VEGAS, NEVADA
www.irwinunion.com

007659

7659

71-234/749
31

9/22/2010

PAY TO THE
ORDER OF   Isabel Castillo Gardening Svcs

$ *********10,477.54*

*TEN THOUSAND FOUR HUNDRED SEVENTY-SEVEN AND 54 / 100

DOLLARS

Isabel Castillo Gardening Svcs
P.O. Box 1093
Solvang, CA  93463

MEMO

Peter C. Mainz

AUTHORIZED SIGNATURE

MP

⑈007659⑈ ⑆074902341⑆ 4275⑈

GOVERNMENT
EXHIBIT
220A
2:15-CR-00198-GMN

Details on Back.

Security Features Included

CSA SERVICE CENTER, LLC

# Count 19



24668

**MRI INTERNATIONAL INC.**
GENERAL ACCOUNT
5330 S. DURANGO DR.
LAS VEGAS, NV 89113

FIRST FINANCIAL BANK
71-234-749

024668

PAY TO THE
ORDER OF    Bombardier Flexjet

9/22/2010    $********80,469.58*

*EIGHTY THOUSAND FOUR HUNDRED SIXTY-NINE AND 58 / 100

DOLLARS

Bombardier Flexjet
LockbBox 847542
1401 Elm St 5th Floor
MEMO    Dallas, TX  75202

AUTHORIZED SIGNATURE

Security features. Details on back.

GOVERNMENT
EXHIBIT
219
2:15-CR-00198-GMN

# Count 20



# Count 18

CSA SERVICE CENTER, LLC
5330 S DURANGO DRIVE
LAS VEGAS, NV 89113

IRWIN UNION BANK
LAS VEGAS, NEVADA
www.irwinunion.com

007659

7659

71-234/749
31

9/22/2010

PAY TO THE ORDER OF Isabel Castillo Gardening Svcs $ *********10,477.54*

*TEN THOUSAND FOUR HUNDRED SEVENTY-SEVEN AND 54 / 100 DOLLARS

Isabel Castillo Gardening Svcs
P.O. Box 1093
Solvang, CA 93463

MEMO

AUTHORIZED SIGNATURE

Details on Back. Security Features Included

GOVERNMENT EXHIBIT
220A
2:15-CR-00198-GMN

CSA SERVICE C

Isabel Castillo Gardening Svcs
P.O. Box 1093
Solvang, CA 93463



# Count 19



MRI INTERNATIONAL INC.
GENERAL ACCOUNT
5330 S. DURANGO DR.
LAS VEGAS, NV 89113

24668

FIRST FINANCIAL BANK
71-234-749

024668

PAY TO THE ORDER OF    Bombardier Flexjet

9/22/2010    $********80,469.58*

*EIGHTY THOUSAND FOUR HUNDRED SIXTY-NINE AND 58 / 100

DOLLARS

AUTHORIZED SIGNATURE

Security features. Details on back.

Bombardier Flexjet
LockbBox 847542
1401 Elm St 5th Floor
Dallas, TX  75202

MEMO

GOVERNMENT
EXHIBIT
219
2:15-CR-00198-GMN

# Count 20



Case 2:15-cr-00093-MMM-JJK Document 339-1 Filed 08/18/20 Page 123 of 126



Investors

$518,415,696

$606,725,463

MRI Class A & Select A Accounts
Deposits $725,105,155
Withdrawals $727,672,727

MRI Holding Accounts

$161,100,000

$12,000,000

$107,013,169

$25,464,525

MRI General Account

Related Parties

$3,900,000

$1,934,095

$16,224,934

Other

FROM: CEO
REF: Status Report
DATE: April 10, 2012

Dear Junzo & Paul:

Thank you for keeping me appraised of the situation with our investors.

In this particular case, it is difficult to predict when the State will conduct an in depth examination of all escrow companies.

This examination is routine and MRI is not being targeted by the State.

The last in-depth State examination occurred approximately five years ago for a differen

In the case of ministry auditors, the following situation has occurred over the past three 

**Fifth, the fund raising must continue to cover all liquidations to allow MRI to focus on payments for all interest payments regardless of the due date.**

**Liquidations will be paid from new funds raised in Select A.**

Second, do not change any disclosure documents or do any announcements in the news letter.

Third, any explanation will be confined to only individual investors that have called our office.

Fourth, I will provide a generic explanation for this delay but only after the investor is paid and a written apology is sent to the investor on an individual basis.

Fifth, the fund raising must continue to cover all liquidations to allow MRI to focus on payments for all interest payments regardless of the due date.

Liquidations will be paid from new funds raised in Select A.

We are still wasting money due to currency exchange issues and these funds could have been invested in Pharmacy claims at an average rate of return of 250 %.

We have lost so many opportunities to purchase claims from many Pharmacies.

The most important thing at this time is keep all interest payments current and reduce the amount of calls to our office.

I will handle this matter with Escrow.

GOVERNMENT
EXHIBIT
**131**
2:15-CR-00198-GMN

