**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> vs. ) <br> ) <br> EDWIN FUJINAGA, ) <br> ) <br> Defendant. ) <br> ) | Case No.: 2:15-cr-00198-GMN-NJK <br><br> **ORDER** |

Pending before the Court is Defendant Edwin Fujinaga ("Defendant's") Motion for Order Requiring the Government to Fulfill Its Obligation to Preserve Brady Evidence ("Motion to Preserve"), (ECF No. 415). The Government filed a Response, (ECF No. 416), and Petitioner filed a Reply, (ECF No. 417). For the reasons discussed below, the Court **DENIES** Defendant's Motion to Preserve.

## I. BACKGROUND

### A. Factual Background

On July 8, 2015, a grand jury returned an Indictment for Fujinaga, Junzo Suzuki ("J. Suzuki"), and Paul Suzuki ("P. Suzuki") (collectively "Defendants"). (*See generally* Indictment, ECF No. 1). Defendants were indicted for owning and operating MRI International Inc. ("MRI"), a Nevada Limited Liability Corporation in Las Vegas, Nevada. (*Id.* ¶ 4). Defendant was the president, chief executive officer, and sole owner of MRI. (*Id.*). J. Suzuki was the executive vice president and P. Suzuki was the general manager of MRI's Japanese operations. (*Id.*).

From 2009 to 2013, Defendants advertised that MRI was engaged in the business of purchasing medical accounts receivable ("MARS"). (*Id.* ¶ 6). MARS are accounts with debts

that medical patients owe to doctors or hospitals that provided the patients services. (*See id.*). MRI advertised itself as a company that bought MARS at a discounted rate and then was able to collect fully on the account in order to make a profit. (*Id.*). The profit was allegedly derived from the difference of how much was owed on the account and the amount that the MARS was purchased for. (*Id.*). MRI advertised that it was able to make this profit through its "purportedly superior collections capability." (*Id.*).

Specifically, MRI made its profit by soliciting investments through offering Certificates of Investment ("Certificates"). (*Id.* ¶ 7). These Certificates claimed to provide investors with a consistent and predictable return through the profit from the MARS. (*Id.*). The Certificates were marketed "primarily, if not exclusively" to Japanese citizens through MRI's center in Tokyo. (*Id.*). The Certificates were advertised seemingly as a bond with payments, a principal, and a maturity date. (*Id.*). Once the Certificates reached their maturity date, investors could either reinvest into a new Certificate or receive cash payment of the amount they were due. (*Id.*). However, because Defendants never actually invested in MARS, they used the money solicited from the new investors' Certificates to pay the prior investors' maturing investments. (*Id.* ¶ 9).

Defendants acquired these investors by "knowingly publishing, mailing, distributing, and transmitting promotional materials that falsely represented that MRI would use any money invested in the Certificates exclusively to purchase MARS." (*Id.* ¶ 8). Defendants also advertised to investors that nobody from MRI, or anyone else, was able to expend investment money for any purpose other than the purchase of MARS. (*Id.*). However, Defendants "regularly expended investor money for things other than purchasing MARS," such as "paying themselves sales commissions, subsidizing gambling habits, paying for personal travel by private jet, and other personal expenses." (*Id.* ¶ 10).

Accordingly, Defendant was charged in the Indictment with: Counts One through Eight in violation of 18 U.S.C. § 1341 Mail Fraud; Counts Nine through Seventeen in violation of 18 U.S.C. § 1343 Wire Fraud; and Counts Eighteen through Twenty in violation of 18 U.S.C. § 1957 Monetary Transactions in property derived from specified unlawful activity. (*See generally id.*). Following a 17-day jury trial, Defendant was found guilty on all charges. (*See* Mins. Proceeding Jury Trial (Day 17), ECF No. 262); (*see also* Partial Transcript of Proceedings 6:25–9:12, ECF No. 273). On May 23, 2019, the Court sentenced Defendant to a total of 50 years custody: 20 years as to Counts 1–8, concurrent to one another and consecutive as to Counts 9–20; 20 years as to Counts 9–17, concurrent to one another and consecutive as to Counts 1–8 and 18–20; and 10 years as to Counts 18–20, concurrent to one another and consecutive to Counts 1–17.[1] (Mins. Proceeding, ECF No. 330); (J. at 3, ECF No. 338). On June 28, 2019, Defendant filed a Notice of Appeal. (*See* Notice of Appeal, ECF No. 339).

**B. Related Civil Case, No. 2:13-cv-1658-JCM-CWH**

On September 11, 2013, the U.S. Securities and Exchange Commission ("SEC") filed suit against Defendant and MRI for perpetrating the above scheme in violation of federal securities laws. *See S.E.C. v. Fujinaga*, No. 2:13-cv-1658-JCM-CWH (D. Nev. 2013). In January 2015, the Court granted summary judgment in favor of the SEC. *See* Order Granting Summary J., *SEC v. Fujinaga*, No. 2:13-cv-1658-JCM-CWH (D. Nev. 2013), ECF No. 188. A month later, the Court appointed a receiver, Robb Evans & Associates, LLC (the "Receiver"), to take possession of properties, documents, safes, secure computer or information systems, secure rooms and locked cabinets belonging to MRI. *See* Order Appointing Receiver, *SEC v. Fujinaga*, No. 2:13-cv-1658-JCM-CWH (D. Nev. 2013, ECF No. 194).

//

---

[1] In addition, the Court ordered Defendant to make restitution in the amount of $1,129,409,449.00 and signed a Final Order of Forfeiture. (*See* J., ECF No. 338).

## C. Correspondence between Government and Defendant

On December 10, 2020, the DOJ informed Defendant via email that the Receiver is "winding down its activities so that it may make disbursements of the recovered funds to MRI's victims" and plans to destroy the remaining documents. (Email from DOJ to Def.'s Counsel dated Dec. 10, 2020, Ex. A to Mot. Preserve, ECF No. 415-2). The DOJ further notified Defendant that the SEC planned to take custody of investor materials that were recovered from the property located at 5330 South Durango. (*Id*.).

Defendant shortly replied, requesting that the Receiver send Defendant logs and inventory of the storage facility items and, in the meantime, preserve the remaining documents and items pending Defendant's appeal. (Email from Def.'s Counsel to Receiver dated Dec. 14, 2020, Ex. B to Mot. Preserve, ECF No. 415-3). In response, the Receiver sent an 811-paged inventory of the boxes stored at Assured Document Management in Las Vegas and informed Defendant that the SEC was in the process of taking custody of all of the boxes the Receiver collected from 5330 S. Durango Blvd. (Email from Receiver to Def.'s Counsel dated Dec. 14, 2020, Ex. C to Mot. Preserve, ECF No. 415-4). The Receiver also notified Defendant that the DOJ maintained its own detailed inventory for the 296 boxes it scanned for its investigation.[2] (*Id*.). Furthermore, the Receiver reiterated its intent to terminate the receivership as "[t]he storage fees and costs associated with the retention of the documents continues [sic] to drain estate resources." (*Id*.).

On January 8, 2021, Defendant mailed a Cease and Desist Letter to the Government, requesting that it "immediately cease and desist destruction of items contained at the Security

---

[2] In 2015, Defendant entered into an agreement with the Government that allowed the FBI to search and seize documents and property in the Receiver's custody. (*See* Decl. Melvin Val Miller ("Miller Decl.") ¶ 6, Ex. 1 to Mot. Reconsideration, ECF No. 202-1). On July 23, 2015, the FBI and DOJ identified documents they wanted to copy. (Id. ¶ 7). The Receiver set aside those documents (the "FBI Documents") and inventoried the boxes in which they were stored. (Id.). According to the Receiver, Defendant and his defense counsel also reviewed the FBI Documents. (Id. ¶ 8).

Exchange Commission Receiver's storage facility, Life Storage, and Assured Document Management, secured or obtained as part of its investigation of or litigation against [Defendant] or any of his codefendants in this case." (Cease and Desist Letter, Ex. F to Mot. Preserve, ECF No. 415-7). The DOJ, SEC, and Receiver individually responded. (*See* DOJ Resp. to Cease and Desist Letter ("DOJ Resp."), Ex. G to Mot. Preserve, ECF No. 415-8); (*see also* SEC Resp. to Cease and Desist Letter ("SEC Resp."), Ex. H to Mot. Preserve, ECF No. 415-9); (*see also* Receiver Resp. to Cease and Desist Letter ("Receiver Resp."), Ex. I to Mot. Preserve, ECF No. 415-10). On February 5, 2021, Defendant filed the instant motion. (*See* Mot. Preserve, ECF No. 415).

## II. <u>LEGAL STANDARD</u>

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court ruled that the suppression by the prosecution of evidence favorable to an accused, upon request for disclosure by the accused, violates due process where the evidence is material to the guilt or punishment of the accused. Materiality is the touchstone in the determination of whether certain evidence qualifies as *Brady* material. *United States v. Dupuy*, 760 F.2d 1492, 1501 n.3 (9th Cir. 1985). The Supreme Court later expanded the concept of exculpatory evidence to include evidence that could be used to impeach government witnesses. *Giglio v. United States*, 405 U.S. 150 (1972).

## III. <u>DISCUSSION</u>

Defendant requests the Court order the Government to preserve the following: (1) items and documents in the Receiver's custody—specifically, those stored in the storage facility, Life Storage, and Assured Document Management; (2) items and documents in the SEC's possession; and (3) items and documents in the DOJ's possession (collectively, the "Documents"). (Mot. Preserve 8:17–9:9, ECF No. 415). In addition, pursuant to the Government's ongoing *Brady* obligation, Defendant asserts that *Brady* requires the

Government to review the Documents for exculpatory evidence and provide those exculpatory files to Defendant. (*Id.* 6:4–8:3). The Court addresses each argument in turn.

### A. Government's Obligation to Produce Exculpatory Evidence

Defendant first argues that the Government has an ongoing *Brady* obligation to produce all exculpatory evidence and therefore, must retain, review, and provide all seized items held by the Receiver, the SEC, and the DOJ. (Mot. Preserve 6:4–8:3). The Government, in response, contends that it has no authority over the Documents in the Receiver's custody. (*See* Resp. to Mot. Preserve 6:4–7:21, ECF No. 416). Even assuming the Government has authority over the Documents, the Government asserts that Defendant already has access to the Documents and cannot otherwise demonstrate the Documents are material to his case. (*Id.* 8:1–11:3).

"There are three components of a true *Brady* violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999); *see also United States v. Bernard*, 623 F.2d 551, 556 (9th Cir. 1979) (citing *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972)). In order to comply with *Brady*, the "individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police." *Strickler*, 527 U.S. at 281 (1999) (citing *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)). There is, however, no *Brady* violation if the defendant "has enough information to be able to ascertain the supposed Brady material on his own." *Milke v. Ryan*, 711 F.3d 998, 1017 (9th Cir. 2013); *see also United States v. Bracy*, 67 F.3d 1421, 1428–29 (9th Cir. 1995).

//
//
//

Here, the Receiver already granted Defendant access to the Documents.[3] (*See* Receiver Resp., Ex. I to Mot. Preserve); (*see also* DOJ Resp., Ex. G to Mot. Preserve); (*see also* SEC Resp. to Cease and Desist Letter, Ex. H to Mot. Preserve). As the Receiver stated in its Response to Defendant's Cease and Desist Letter, "[d]uring the 5 years that have passed since its appointment, the Receiver repeatedly extended an open offer to facilitate your review, analysis and/or inspection of the Documents." (Receiver Resp. at 1). Defendant, in fact, accepted the Receiver's invitations and accessed the Documents twice—once, in September 2015 and again, in August 2017. (*Id.* at 2); (*see also* Miller Decl. ¶ 8).

As to the documents in the Government's possession, the DOJ and SEC also provided Defendant with access to the documents they seized from the Receiver.[4] (*See* DOJ Resp. at 5–6); (*see also* SEC Resp. at 2) ("We will make [the documents recovered from the 5330 S. Durango Boulevard property] available to you . . . . You may [also] obtain copies of documents, at your cost, by request made through Government counsel in the Criminal

---

[3] The parties also dispute whether the Government's *Brady* obligation imputes to the Receiver. The Government argues that the Receiver is a third-party entity, appointed by Judge Mahan in the related civil case and therefore, is not an agency within the executive branch. (Resp. to Mot. Preserve 6:4–7:10). Defendant, in response, argues that the relationship between the Receiver and the Government is much closer than explained by the Government, as evidenced by the Government's *ex parte* communication with the Receiver concerning the seized items. (Reply to Mot. Preserve 6:22–7:3, ECF No. 417).

The Court finds that Defendant's Motion fails primarily because Defendant has access to the Documents. However, in addition, the Court agrees with the Government that the actions of the Receiver are not imputed to the Government. The Ninth Circuit in *N. Am. Broad., LLC v. United States* clarified the role of a receiver, explaining that, "[a] court-appointed receiver is an officer of the court, appointed on behalf and for the benefit of all the parties having an interest in the property, not for the plaintiff or defendant alone." *N. Am. Broad., LLC*, 306 F. App'x 371, 373 (9th Cir. 2008) (citations omitted). The Receiver, in this case, obtained the Documents at the direction of the Court and therefore, does not appear to act as an agent of the Government's investigation. (*See* Decl. of Gene M. Tierney, Ex. 1 to Resp. to Mot. in Limine ¶ 4, ECF No. 118-1) (the court-appointed "Receiver, on his own initiative took possession of the documents and property belonging to MRI and Fujinaga, removed them from their original buildings, and stored them in a storage unit near the Receiver's office. The FBI did not direct or control the Receiver's decision where or how to store that property.").

[4] Specifically, the DOJ imaged 296 boxes in the Receiver's custody. (*See* Email from Receiver to Def.'s Counsel dated Dec. 14, 2020 at 1); (*see also* DOJ's Resp. at 5–41). The SEC seized approximately 1,500 boxes of records from the 5330 S. Durango Boulevard property. (*See* SEC's Resp. at 1).

Action."). Not only did the DOJ provide access to the documents it seized from the Receiver's custody, but it also produced the documents in 2015 as part of its discovery obligations. (*See* DOJ Resp. at 5–41). Specifically, the DOJ "provided [Defendant] with everything that the Government copied and seized from the receiver, as well as a detailed index describing those items" in a thumb drive. (*Id*. at 2–3). In addition, "[t]he receiver provided [Defendant's] office with the opportunity to inspect and copy anything in [the Government's] possession, an opportunity of which [Defendant] availed itself of back in 2017." (*Id*. at 3). Because Defendant has continuing access to the Documents, Defendant fails to demonstrate how the Government specifically maintains a continuing *Brady* obligation to review the Documents for exculpatory evidence. *See Bracy*, 67 F.3d at 1429 (finding that the government did not suppress the defendant's criminal history because the government disclosed "all the information necessary for the defendants to discover the alleged *Brady* material on their own."); *see also United States v. Dunning*, No. CR-07-1390-PHX-MHM, 2009 U.S. Dist. LEXIS 111051, at *3 (D. Ariz. Nov. 9, 2009) ("*Brady* does not mean that the Government must take the evidence that it has already disclosed to Defendant, sift through this evidence, and organize it for Defendant's convenience."). Given Defendant's inability to demonstrate governmental suppression, his *Brady* claim fails.

      Defendant is also unable to establish that the Documents are material to the defense. Failure to disclose information only constitutes a *Brady* violation if the requested information is "material" to the defense. *United States v. Shaffer*, 789 F.2d 682, 687-88 (9th Cir. 1986) (citing *Sanchez v. United States*, 50 F.3d 1448, 1454 (9th Cir. 1995)). Evidence is "material" if it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Comstock v. Humphries*, 786 F.3d 701, 710 (9th Cir. 2015) (citing *Kyles*, 514 U.S. at 435). The defendant bears the initial burden of "producing some evidence to

support an inference that the government possessed or knew about material favorable to the defense and failed to disclose it." *United States v. Price*, 566 F.3d 900, 910 (9th Cir. 2009).

Here, Defendant fails to meet its initial burden in demonstrating that the Documents are, in fact, material to his defense. Defendant argues that "[d]estruction of the seized items will violate the government's discovery" and "interfere with Mr. Fujinaga's ability to present a defense under the Sixth Amendment." (Mot. Preserve 7:6–12). There is no evidence, however, that the Documents are relevant—much less exculpatory or prejudicial—to Defendant's case. *See, e.g.*, *United States v. Vigil*, 632 F. App'x 893, 896 (9th Cir. 2015) ("The defense has failed to show that the Teleconference Notes or Timeline contained any favorable information, let alone information that created a reasonable probability of an acquittal.").

Simply alleging that the Government fails to disclose favorable evidence is insufficient to demonstrate a *Brady* violation as such a rule "would impose an impossible burden on the prosecutor." *United States v. Bagley*, 473 U.S. 667, 682 n.7 (1985) ("[A] rule that the prosecutor commits error by any failure to disclose evidence favorable to the accused, no matter how insignificant, would impose an impossible burden on the prosecutor and would undermine the interest in the finality of judgments."). Because Defendant already has access to the Documents and Defendant further fails to specify how the Documents may alter the outcome of his case, the Court finds that the Government does not have a *Brady* obligation to review the Documents for exculpatory evidence.

**B. Government's Obligation to Preserve Evidence**

Defendant additionally argues that the Government's *Brady* obligation requires the Government to prevent the destruction of the Documents. (Mot. Preserve 8:4–16). Specifically, Defendant argues that the Documents are material to Defendant's pending appeal and destroying the Documents will severely impact any retrial should the Ninth Circuit reverse the judgment. (*Id*. 8:14–16).

Similar to the duty to disclose,[5] "[t]he duty to preserve evidence is limited to material evidence, i.e., evidence whose exculpatory value was apparent before its destruction and that is of such nature that the defendant cannot obtain comparable evidence from other sources." *Grisby v. Blodgett*, 130 F.3d 365, 371 (9th Cir. 1997); *see also California v. Trombetta*, 467 U.S. 479, 489, 81 L. Ed. 2d 413, 104 S. Ct. 2528 (1984). In *U.S. v. Booth*, the Ninth Circuit held that the government did not have a duty to preserve the items at issue in the case (i.e., hard drives) because "[t]here was nothing about the hard drives . . . that would have made their allegedly exculpatory nature apparent to the government." *Booth*, 309 F.3d 566, 574 (9th Cir. 2002).

Likewise, Defendant fails to explain the materiality of the Documents in the Receiver's custody. Defendant broadly argues, "should the government be allowed to destroy the evidence at issue before the Circuit has conducted that review, [Defendant] will be unable to be retried should the Circuit reverse." (Mot. Preserve 8:14–16). In his Reply, Defendant points to the electronic servers—specifically, the Argon server—as key evidence in Defendant's direct appeal. (Reply 7:20–8:4). Defendant's conclusory statements, however, do not explain how the documents are material to his defense—other than the broad statement that the documents *may* be valuable if Defendant is eventually retried. Such sweeping allegations of materiality are insufficient to establish a *Brady* violation. In addition, Defendant fails to provide authority to support the assertion that the Government must safeguard the Documents on Defendant's behalf when the Documents are equally available to Defendant. Because Defendant is unable

---

[5] The Court notes the distinction between the duty to disclose and the duty to preserve under *Brady*. "In a Brady failure to disclose claim, the good or bad faith of the government is irrelevant, while in a failure to preserve or gather evidence claim, a showing of bad faith is required." *Pressler v. Nevada Dep't of Pub. Safety*, No. 3:19-CV-00494-RCJ-WGC, 2019 WL 7340507, at *6 (D. Nev. Dec. 12, 2019), report and recommendation adopted, No. 3:19-CV-00494-RCJ-WGC, 2019 WL 7332744 (D. Nev. Dec. 27, 2019); *see also Tennison v. City & Cnty. of San Francisco*, 570 F.3d 1078, 1087 (9th Cir. 2009); *see also Arizona v. Youngblood*, 488 U.S. 51, 57 (1988).

to justify preservation of the Documents, the Court denies Defendant's request to order the Government to preserve the Documents in the Receiver's custody.[6]

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for Order Requiring the Government to Fulfill Its Obligation to Preserve Brady Evidence ("Motion to Preserve"), (ECF No. 415) is **DENIED**.

**DATED** this __14__ day of May, 2021.

_____
Gloria M. Navarro, District Judge
United States District Court

---

[6] Defendant asserts, in his Reply, that "it is unconstitutional, discriminatory, and improper for the government to demand Mr. Fujinaga pay to inspect the seized items and pay for the government's storage needs." (Reply 9:9–12). Defendant, however, fails to provide any supporting authority to support this assertion. Furthermore, any arguments based on this allegation should have been presented in Defendant's Motion to Preserve, and not addressed for the first time in Defendant's Reply. *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (providing that courts may disregard arguments first raised in a reply brief because the timing of the argument deprives the opposing party of the opportunity to respond). The Court accordingly declines to address Defendant's additional argument raised in his Reply.