# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:15-cr-00198-GMN-NJK |
| vs. | ) | |
| | ) | **ORDER DENYING § 2255 MOTION** |
| EDWIN FUJINAGA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pending before the Court is Petitioner Edwin Fujinaga's Motion to Vacate, Set Aside, or Correct Sentence under § 2255 ("§ 2255 Mot."), (ECF No. 550). The Court appointed Petitioner counsel, (Order Appointing Counsel, ECF No. 552), who filed a Supplement to Petitioner Motion, (ECF No. 558). The Government filed a Response to Petitioner's Motion and Supplement, (ECF No. 560), to which Petitioner filed a Reply, (ECF No. 561).

The Court **DENIES** Petitioner's § 2255 Motion because he fails to show vacatur or correction of his conviction and sentence is warranted.

## I.    BACKGROUND

In 2015, a grand jury returned an Indictment for Petitioner, Junzo Suzuko ("J. Suzuki"), and Paul Suzuki ("P. Suzuki") for owning and operating MRI International Inc. ("MRI"), a Nevada Limited Liability Corporation in Las Vegas, Nevada. (*See generally* Indictment, ECF No. 1).

Petitioner was the president, chief executive officer, and sole owner of MRI. (*Id.*). "MRI functioned almost entirely as a Ponzi scheme, that is, money solicited from new investors was used to pay prior investors' maturing investments." (Presentence Report ("PSR") ¶ 12). Petitioner was charged in the Indictment with twenty counts: Counts One through Eight in violation of 18 U.S.C. § 1341 Mail Fraud; Counts Nine through Seventeen in violation of 18

U.S.C. § 1343 Wire Fraud; and Counts Eighteen through Twenty in violation of 18 U.S.C. § 1957 Monetary Transactions in property derived from specified unlawful activity. (*See generally* Indictment).  A jury found Petitioner guilty on all charges. (*See* Mins. Proceeding Jury Trial (Day 17), ECF No. 262); (*see also* Partial Tr. of Proceedings 6:25–9:12, ECF No. 273).

### A. Petitioner's Sentencing

Before sentencing, the United States Probation Office ("PO") submitted a PSR, recommending the Court sentence Petitioner to a total of 40 years custody. (PSR ¶ 76).  In reaching this sentence, the PO applied, among other things, a 30-level enhancement pursuant to United States Sentencing Guideline ("U.S.S.G") § 2B1.1(b)(1)(P) because Petitioner caused a loss greater than $550 million, and a two-level enhancement pursuant to U.S.S.G. § 3A1.1(b)(1) because Petitioner knew or should have known the victims of his offense were vulnerable victims. (*Id.* ¶¶ 23, 26).  The PO's recommendation considered Petitioner's age, who was then 72 years old, and lack of criminal history. (*Id.* ¶¶ 74–76).  Additionally, the PO recommended ordering Petitioner pay $1.5 billion in restitution. (*Id.* ¶ 73).

Petitioner filed an Objection, contesting the PO's application of the 30-level enhancement pursuant to § 2B1.1(b)(1)(P) because the record in this case only supported a loss amount of $518 million.  Petitioner further argued that the Court should offset and arguing that the Court should further offset the $518 million loss amount by any principal and interest that was paid back to investors pursuant to *United States v. Van Alstyne*, 584 F.3d 803 (9th Cir. 2009). (Pet. Obj. PSR 4:6–14, ECF No. 280).  Petitioner also objected to the PO's application of the two-level vulnerable victim enhancement pursuant to U.S.S.G. § 3A1.1(b)(1) because there was no evidence that individuals who were impaired physically or mentally were targeted, and that Petitioner did not seek elderly investors to invest with MRI. (*Id.* 6:7–12).  Finally,

///

Petitioner objected to PO's restitution calculation because there was "insufficient evidence to find restitution in excess of $1.5 billion[.]" (*Id.* 6:19–21).

At sentencing, Petitioner argued that the 30-level enhancement was inapplicable because the loss amount was below $550 million, especially when considering the "cases where the Ninth Circuit" found the district courts erred in not "deduct[ing] an offset of funds that were paid back to the victims."[1] (Sentencing Tr. 12:20–13:9, ECF No. 346); (Pet. Obj. PSR 4:6–14). Petitioner maintained that the Court should deduct the principal and interest Petitioner paid back, up to the amount victims originally invested, from the loss amount. (Sentencing Tr. 21:2–15, 28:1–3). In response, the Government averred that the PO properly applied the 30-level enhancement because the loss caused by Petitioner amounted to $813 million. (*Id.* 21:17–27:11). This total, which the PO concurred with, accounted for funds returned to the investors up to the amount invested but did not deduct for interest payments made to investors. (*Id.* 30:10–33:2). The Court agreed with the Government and found the loss caused by Petitioner amounted to $813 million and applied the 30-level enhancement pursuant to § 2B1.1(b)(1)(P). (*Id.*).

Next, the Court disagreed with Petitioner's contention that the vulnerable victim enhancement was inapplicable because there was no proof that he specifically targeted elderly investors. (*Id.* 40:1–41:2). The Court found the enhancement was applicable because, for the enhancement to apply, the defendant need not specifically target a certain group so long as the defendant knows or should have known of the victim's unusual vulnerability. (*Id.* 41:3–45:20). And the Court determined that Petitioner knew or should have known of his victims' unusual

---

[1] Petitioner did not specifically cite *Van Alstyne* at sentencing. But he argued that the loss amount calculation should be reduced based on principal and interest paid back to investors up to their initial investment, and he cited *Van Alstyne* in his Objection to the PSR. From these facts, the Court deduces that his reference to Ninth Circuit cases referred to *Van Alstyne*. (*Id.* 21:2–15); *see Van Alstyne*, 584 F.3d at 819 (instructing the district court in recalculating the loss amount to "reduce the amount of loss by the amount of funds returned by the amount of funds returned to investors up to the amount invested, but not by the amount, if any, of any profit made by any investors").

vulnerability because he marketed the investment product as a low-risk investment appropriate for retirement savings, specifically rejected a suggestion to exclude investors over the age of 80, and included a clause making the investment certificates easily transferrable in an inheritance. (*Id.*).  Moreover, many investors were of advanced age. (*Id.*).

Finally, the Court addressed Petitioner's argument that there was insufficient evidence to impose a restitution order exceeding $1 billion as stated in the PSR. (*Id.* 46:13–48:2).  The Government averred, and the Court agreed, that the record supported a restitution order amounting to $1.12 billion. (*Id.* 51:10–52:5).  The Court disagreed with the PO's recommendation that a downward departure to 40 years was warranted considering the 18 U.S.C. § 3553(a) factors and sentenced Petitioner to a total of 50 years in custody: 20 years as to Counts 1–8, concurrent to one another and consecutive as to Counts 9–20; 20 years as to Counts 9–17, concurrent to one another and consecutive as to Counts 1–8 and 18–20; and 10 years as to Counts 18–20, concurrent to one another and consecutive to Counts 1–17. (Mins. Proceeding, ECF No. 330); (J. at 3, ECF No. 338).

**B. Petitioner's Appeal to the Ninth Circuit**

Petitioner appealed his conviction and sentence to the Ninth Circuit. (Not. Appeal, ECF No. 433).  Petitioner argued that the Court (1) erred in its loss calculation by ignoring *Van Alstyne* and failing to offset principal and interest paid back to investors up to the amount they initially invested and by applying the two-level vulnerable victim enhancement; (2) erroneously found the Government had shown by a preponderance of the evidence that a restitution order of $1.12 billion was warranted; and (3) unreasonably imposed a sentence greater than necessary considering Petitioner's advanced age and lack of criminal history. (Def. Opening Br. at 65–70, 74–75, Ex. 1 to Reply, ECF No. 561-1).  The Ninth Circuit rejected Petitioner's claims and affirmed his conviction and sentence. *United States v. Fujinaga*, No. 19-10222, 2022 WL 671018 (9th Cir. Mar. 7, 2022).  Petitioner then filed the instant § 2255 Motion, (ECF No. 550).

## II.    LEGAL STANDARD

Section 2255 provides, in pertinent part: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . .  may move the court which imposed the sentence to vacate, set aside or correct the sentence." *See also Davis v. United States*, 417 U.S. 333, 344–45 (1974).  To warrant relief, the prisoner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("*Brecht's* harmless error standard applies to habeas cases under section 2255[.]").  Relief is warranted only upon the showing of "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis*, 417 U.S. at 346.

Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting 28 U.S.C. § 2255).  The court may deny a hearing if the movant's allegations, viewed against the record, fail to state a claim for relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996).  To earn the right to a hearing, therefore, the movant must make specific factual allegations which, if true, would entitle him to relief. *Id*. Mere conclusory statements in a § 2255 motion do not warrant a hearing. *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980).

///

///

///

## III.   <u>DISCUSSION</u>

Petitioner again contends that the Court erred in its loss calculation, restitution calculation, application of the vulnerable victim exception, and in imposing an unreasonably long sentence, but now presents these arguments as ineffective assistance of counsel claims. (*See* § 2255 Mot. at 11–13); (Reply 8:23–24, ECF No. 561) (explaining that Petitioner "did challenge the loss calculation [on appeal], but *not* based on ineffective assistance of counsel") (emphasis in original).  Petitioner also argues for the first time that his trial and appellate counsel were ineffective for failing to argue his Indictment was constructively amended because the Court's loss calculation considered conduct predating the period charged in the Indictment. (Supp. 30:7–36:2).  The Court begins by examining Petitioner's arguments regarding his trial and appellate counsel's alleged ineffectiveness in arguing loss calculation, restitution calculation, application of the vulnerable victim exception, and length of Petitioner's sentence.

### A.  Relitigating Claims Decided on Direct Appeal

Broadly speaking, Petitioner contends his trial and appellate counsel ineffectively argued four claims that were adversely decided against him by this Court and affirmed by the Ninth Circuit.  The Government contends that despite being reframed as ineffective assistance of counsel claims, Petitioner's claims are barred from reconsideration in a § 2255 motion because the underlying arguments were already rejected by the Ninth Circuit on direct appeal. (Resp. 8:1–10, ECF No. 560).

Relief under § 2255 is limited because the movant "already has had a fair opportunity to present his federal claims to a federal forum," whether or not he took advantage of the opportunity. *United States v. Frady*, 456 U.S. 152, 164 (1982).  "The law in this circuit is clear that when a matter has been decided adversely on appeal from a conviction, it cannot be litigated again on a 2255 motion." *Odom v. United States*, 455 F.2d 159, 160 (9th Cir. 1972).

And "[g]rounds which were apparent on original appeal cannot be made the basis for a second attack under § 2255." *See United States v. Egger*, 509 F.2d 745, 748 (9th Cir. 1975).

The Court agrees with the Government that although Petitioner has reframed his challenges as ineffective of assistance of counsel claims, he seeks to relitigate issues already decided by the Ninth Circuit on direct appeal.[2] *See United States v. Thompson*, No. 2:16-cr-00230, 2023 WL 4262534, at *3 (D. Nev. June 28, 2023) ("To the extent these claims are merely a re-presentation of claims and substantive arguments rejected by the Ninth Circuit on appeal now couched as ineffective assistance of counsel claims, they are barred from reconsideration by way of a § 2255 motion such as this one.") (cleaned up); *Rivera-Alvarado v. United States*, No. 13-cv-00509, 2014 WL 5385501, at *9 (D. Ariz. Oct. 21, 2014) (same). Accordingly, these claims may not be used as a basis for relief in a § 2255 petition.

## B. Constructive Amendment

Petitioner raises one claim that was not litigated on appeal: That his trial and appellate counsel were ineffective for failing to argue his Indictment was constructively amended because the Court's loss calculation considered conduct predating the period charged in the Indictment. (Supp. 30:7–36:2.) In response, the Government contends Petitioner's argument is misplaced because at sentencing, a court is allowed to consider conduct that is "not necessarily

---

[2] Petitioner's Reply attempts to explain why his arguments surrounding the Court's loss calculation are different from those previously raised on appeal. Petitioner's purported distinctions, however, all involve his trial and appellate counsel's ineffectiveness in arguing the Ninth Circuit's decision in *Van Alstyne*. (Reply 8:16–13:5, 17:19–21:23). In other words, Petitioner does not dispute that his trial and appellate counsel raised *Van Alstyne*, nor that their arguments applying *Van Alystne* were "wrong;" instead, he argues "they . . . did not go far enough in demonstrating the egregious error in the loss calculation urged by the Government at sentencing." (Supp. 48:12–14). The Court is not persuaded that trial and appellate counsel's alleged failure to robustly argue *Van Alstyne* constitutes a new issue for purposes of Petitioner's § 2255 Motion. In affirming Petitioner's sentence, the Ninth Circuit determined the Court properly applied Ninth Circuit precedent, including *Van Alstyne*. Even if the Court found Petitioner raised a cognizable distinction, his trial and appellate counsel were not ineffective in how they argued *Van Alstyne* because the Court did not err in its loss calculation for the reasons set forth by the Government. (Resp. 8:21–24, 11:3–7).

connected to what was charged in the indictment." (Resp. 9:3–5).  The Court agrees with the Government that Petitioner's argument improperly conflates two distinct concepts.

"A constructive amendment occurs when the defendant is charged with one crime but, in effect, is tried for another crime." *United States v. Pang*, 362 F.3d 1187, 1194 (9th Cir. 2004). In essence, during trial, the parties and the court are tethered to the language charged in the indictment, and a constructive amendment claim evaluates whether evidence at trial or the court's jury charge expands the scope of the indictment to crimes that have not been charged. *See United States v. Ward*, 747 F.3d 1184, 1189 (9th Cir. 2014) ("An amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them.") (quoting *United States v. Von Stoll*, 726 F.2d 584, 586 (9th Cir. 1984)).  Conversely, at sentencing, a court may consider "all relevant conduct in calculating the amount of loss under the sentencing guidelines." *United States v. Kirk*, 849, Fed. App'x 224, 225 (9th Cir. 2021).  This includes "charged, *uncharged*, and even acquitted conduct in the determination of loss." *United States v. Thomsen*, 830 F.3d 1049, 1071 (9th Cir. 2016) (citation omitted) (emphasis added).

Here, Petitioner argues that his counsel was ineffective at sentencing.   Because the Court was not constrained by the charges within the four corners of the Indictment in calculating loss at sentencing, his Indictment was not constructively amended by virtue of the Court considering relevant uncharged conduct.  It is well-established that counsel is not ineffective for failing to raise a meritless argument. *See Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985) ("Failure to raise a meritless argument does not constitute ineffective assistance [of counsel].").  Pursuant to this principle, Petitioner's counsel was not ineffective for failing to raise this meritless argument.

To the extent Petitioner contends that his Indictment was constructively amended because evidence of conduct predating the period charged in the Indictment was introduced at

trial, the Court disagrees.  The contested evidence fell within the specified acts alleged in the Indictment because it involved the same misrepresentations made to investors and was inextricably intertwined with the charged conduct. (Tr. Proceedings 12:4–14:14, ECF No. 195); *see United States v. Baghat*, 436 F. 3d 1140, 1146 (9th Cir. 2006) (explaining that "evidence not referenced in the indictment may be admitted for impeachment or other legitimate purposes, without effecting any changes to the indictment").  And the Court instructed the jury that they "are here only to determine whether the [D]efendant is guilty or not guilty of the charges in the [I]ndictment" and that the Defendant "is not on trial for conduct or offense not charged in the [I]ndictment." (Jury Instructions 33:1–36, ECF No. 266).  This instruction clarified the proper and improper scope of evidence predating the charges in the Indictment in determining Petitioner's guilt. *See Ward*, 747 F.3d at 1191 (holding instructions requiring the jury to find the conduct charged in the indictment before it may convict provides sufficient assurance that the jury convicted the defendant based solely on the conduct actually charged in the indictment); *see also United States v. Daraio*, 445 F.3d 253, 260 (3d Cir. 2017) ("Although we agree with Daraio that the government presented a significant amount of evidence concerning her prior tax non-compliance beyond that charged in the indictment, the district court's instructions ensured that the jury would convict her, if at all, for a crime based on conduct charged in the indictment.").  In short, the evidence introduced at trial did not embody a set of facts distinctly different from those provided in the Indictment, nor did the jury instructions substantially alter the crime charged.  As Petitioner's claim is without merit, his counsel could not have been ineffective by failing to raise a meritless issue. *Boag*, 769 F.2d at 1344.

In sum, the Court finds Petitioner's § 2255 Motion fails to show that vacatur of his conviction or sentence is warranted.  Petitioner's claims either impermissibly seek to relitigate

///

issues already decided by the Ninth Circuit on direct appeal or are without merit.  Accordingly, Petitioner's § 2255 Motion is DENIED.

### C. Evidentiary Hearing

Under § 2255, the Court must hold an evidentiary hearing unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *see Frazer v. United States*, 18 F.3d 778, 781 (9th Cir. 1994).  "No hearing is required if the allegations, viewed against the record, either fail to state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *Shah v. United States*, 878 F.2d 1156, 1158 (9th Cir. 1989); *see United States v. Howard*, 381 F.3d 873, 879 (9th Cir. 2004) (holding that no evidentiary hearing is required unless the petitioner raises "detailed and controverted issues of fact").

The detailed record in this matter is a sufficient basis on which to decide Petitioner's claims and determine that he is entitled to no relief.  Accordingly, the Court exercises its discretion not to hold an evidentiary hearing. *Shah*, 878 F.2d at 1158.

### B. Certificate of Appealability

A habeas petitioner may not appeal the denial of a § 2255 habeas petition unless he obtains a certificate of appealability from a district or circuit judge. 28 U.S.C. § 2253(c)(1)(B); *see also United States v. Asrar*, 116 F.3d 1268, 1269-70 (9th Cir. 1997) (holding that district courts retain authority to issue certificates of appealability).  A certificate of appealability is authorized "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  To meet this threshold showing, a petitioner must show that (1) the issues are debatable among jurists of reason, (2) a court could resolve the issues in a different manner, or (3) the questions are adequate to deserve encouragement to proceed further. *Lambright v. Stewart*, 220 F.3d 1022, 1025–26 (9th Cir. 2000) (citing *Slack v. McDaniel*, 529 U.S. 473 (2000); *Barefoot v. Estelle*, 463 U.S. 880 (1983)).

Based on this Court's review of the record, the issues presented are not debatable among jurists of reason and no issues could be resolved in a different manner.  This Court further finds that no questions are adequate for further proceedings.  Therefore, Petitioner is not entitled to a certificate of appealability.

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that Petitioner's Motion to Vacate, Set Aside, or Correction Sentence under § 2255, (ECF No. 550), is **DENIED**.

Dated this  13  day of December, 2023.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT